ALMON, Justice.
Angela Flint, as administratrix of the estate of Jeffery Wayne O’Quinn, appeals a summary judgment in favor of the City of Ozark and in favor of Sergeant John Bottoms and Officer Edward Farr, both of the Ozark Police Department, in her action alleging wrongful death. Flint alleged that the officers had negligently or wantonly failed to arrest Justin Pridgen, an underage person, who was consuming alcoholic beverages at a party that the officers investigated, and that their failure in that regard proximately caused the death of Jeffery O’Quinn. After leaving the party, Pridgen was involved in a orie-vehicle automobile accident that killed O’Quinn, his passenger.
The issue is whether police officers may be held liable for failing to arrest an underage person who has been consuming alcohol, but who the officers do not know is intoxicated.
This case is very similar to Nunnelee v. City of Decatur, 643 So.2d 543 (Ala.1993). In Nunnelee this Court held that the City of Decatur and its police officers could not be liable for failing to arrest a motorist, because there was no evidence that the officers had known that the motorist was intoxicated. Nunnelee involved the driver of an automobile that crossed the median of Interstate Highway 65 and struck an oncoming car, killing both occupants of the oncoming car. The administrator of the estates of the two *246 persons killed filed a wrongful death action against the City of Decatur and several of its police officers, alleging that the officers had acted negligently in failing to arrest the driver after they had stopped him for a suspected DUI violation an hour and a half before the fatal accident. The officers had stopped the driver after his vehicle had nearly struck the officers’ patrol car. The officers administered a field sobriety test; the driver passed the test and the officers released him.
In Nunnelee this Court affirmed a summary judgment for the officers and the City of Decatur. In its opinion it quoted at length from the special concurrence in Thetford v. City of Clanton, 605 So.2d 835, 843^44 (Ala.1992):
“ ‘The principles of substantive immunity are particularly applicable to a case such as this one, where an officer is required to make difficult decisions on the spur of the moment. The need to attract and keep capable officers, the allocation of scarce resources for law enforcement, and the need for officers to make decisions based on the requirements of the circumstances rather than on their potential for personal liability are among the reasons for the doctrine of substantive immunity for public officers. This Court said in Calogrides [v. City of Mobile, 475 So.2d 560 (Ala.1995) ]:
“ ‘ “ ‘For the courts to proclaim a new and general duty of protection in the law of tort, even to those who may be the particular seekers of protection based on specific hazards, could and would inevitably determine how the limited police resources of the community should be allocated and without predictable limits....
[[Image here]]
[TJhere is no warrant in judicial tradition or in the proper allocation of the powers of government for the courts, in the absence of legislation, to carve out an area of tort liability for police protection to members of the public.’ ”
“ ‘475 So.2d at 562, quoting Riss v. City of New York, 22 N.Y.2d 579, 582-83, 293 N.Y.S.2d 897, 897-98, 240 N.E.2d 860, 860-61 (1968).’”
Nunnelee, 643 So.2d at 546 (quoting special concurrence of Almon, J., in Thetford).[1]
In Nunnelee the plaintiff did not produce substantial evidence that the officers had known that the driver was intoxicated. Thus, the Court held that the city and the police officers could not be held liable for failing to arrest him.
On August 16, 1991, Jeffery O’Quinn and Justin Pridgen attended a party at a private residence in Ozark, Alabama. The two arrived between 9:30 and 10:30 p.m. Alcoholic beverages were available at the party, and the party was attended both by persons of legal age for consuming alcohol and by underage persons. Shortly after 10:30 p.m. the Ozark police were dispatched to the general vicinity of the party to answer a complaint that someone was “streaking,” or running naked, in the neighborhood. When the officers arrived at the scene of the alleged streaking, Officer Farr observed what he believed to be a naked person entering the residence where the party was taking place. Officer Farr approached the suspect and determined that the person was not naked, but was wearing a flesh-colored body suit.
During this same time, Sergeant Bottoms went to the rear of the residence. As Bottoms reached the back of the house, he encountered three young men who were attempting to leave the party. One of these three men was Pridgen. Bottoms asked the three how old they were, and they told him their ages; all three were under 21. Bottoms then had the three return to the kitchen of the house. Bottoms asked all of the people under 21 to move to one side of the kitchen and all of those 21 and older to move to the other side. Several partygoers identified themselves as being under 21. There is a factual dispute as to whether Bottoms individually inspected each of those under 21 for indications of alcohol use. Bottoms retrieved *247 an unopened can of beer from the kitchen table and gave it to one of the persons over age 21. Bottoms did not ask anyone at the party for proof of age.
When Bottoms encountered Pridgen, Prid-gen had already consumed one can of beer, or possibly two. According to Bottoms, he did not believe that any of those under 21 had been consuming alcohol.
Pridgen testified by deposition that in plain view in the kitchen were three 48-quart coolers stocked with beer. Pridgen also stated that the table from which Bottoms retrieved the unopened beer was covered with empty beer boxes. In contrast to this testimony, Bottoms testified by deposition that the one unopened beer was the only alcohol he saw. Bottoms stated that he saw one cooler, that he looked inside it, and that it contained no beer.
While Bottoms was investigating the events inside the residence, Officer Farr remained in the front yard with some other people who were attending the party. Farr spoke to one of the lessees of the residence. This person was drinking beer from a glass mug. Farr testified by deposition that he believed this person to be over 21; however, this person was actually under 21. Farr did not request proof of age from any of the people he encountered in the front yard.
Later that evening, both Bottoms and Farr, separately, came back to the party. The record contains evidence that on both of the return visits underage persons were still consuming alcohol. The evidence also shows that by the time the officers had made their second visits Pridgen may have consumed up to four beers. The record, however, contains no evidence whatever that either officer knew that Pridgen was intoxicated.
At approximately 2:56 a.m., while Pridgen was driving O’Quinn home in Pridgen’s automobile, he had a one-car accident that killed O’Quinn. While Pridgen was receiving treatment at a hospital for his injuries, his blood was tested; the test indicated a blood alcohol level of 0.14%, an amount in excess of the legal limit.
The plaintiff asserts that the police officers who encountered Pridgen were negligent or wanton in failing to arrest him, because he was underage and had been consuming alcohol. The plaintiff contends that if Pridgen had been arrested, then O’Quinn would not have died as a proximate consequence of Pridgen’s intoxication. The plaintiff argues that the mere fact that an underage person is consuming alcohol is enough reason to arrest the person and that in this ease the police should be liable for not arresting Pridgen. This argument is simply not in accord with the decisions of this Court.
Summary judgment was not improper simply because there was conflicting evidence as to how much alcohol was present at the party and how many coolers were in plain view. On their motion for summary judgment, the defendants made a prima facie showing that at the time of their encounters with Pridgen the officers did not know that he was intoxicated. The Nunnelee test therefore required the plaintiff to present substantial evidence that the officers did know that Pridgen was intoxicated. Rule 56, Ala.R.Civ.P.; Ala.Code 1975, § 12-21-12; Nunnelee, supra. The record contains no such evidence.
The plaintiffs evidence tended to show that Pridgen had had only one beer, or at most two beers, before the police first arrived at the party. Further, there is no evidence that the officers knew that Pridgen was intoxicated when they returned to the party. To the contrary, Pridgen stated that he was not impaired when the officers returned; he stated that at most he consumed four cans of beer over the course of the evening and that he was never intoxicated. The mere fact that alcohol was present at the party does not render the officers liable for failing to arrest every underage person at the scene who might have been drinking.
The plaintiff attempts to distinguish Nun-nelee from the present case by stating that the present case involves an underage person, and that underage person could have been arrested without being intoxicated. The plaintiffs theory evidently is that the driver in Nunnelee could not have been arrested unless he was intoxicated. While it may be true that Pridgen could have been arrested without being intoxicated, simply because he was an underage person consum *248 ing alcohol, the Nunnelee standard is the standard by which a police officer’s conduct must be measured: whether the officer knew the subject was intoxicated.
The facts of the present case are. even weaker than the facts of Nunnelee, in that there is no evidence that the officers knew that Pridgen would operate a motor vehicle. Pridgen was not driving a motor vehicle when the officers encountered him. Officer Bottoms said he did not smell alcohol on Pridgen. Further, there was no evidence that the officers knew that Pridgen would become intoxicated and then proceed to drive an automobile.
We decline to create a new theory of liability against police officers acting within the scope of their discretion, for the same reasons that were addressed in Nunnelee. The summary judgment is affirmed.
AFFIRMED.
SHORES, HOUSTON, INGRAM and COOK, JJ., concur.

. Although the Court in Nunnelee did not completely embrace my view of substantive immunity, the judgment in this present case is due to be affirmed even on the basis of the position stated by the Nunnelee majority. I have not retreated at all from my view of substantive immunity as I stated it in my special concurrence in Thetford v. City of Clanton.