In January 1996, Robert Avery Montgomery filed a five-count complaint against the City of Montgomery, numerous law enforcement officers, Gayfers Department Stores, Inc., and David Malcom. The complaint alleged false arrest, false imprisonment, malicious prosecution, a violation of Ala. Code 1975, § 15-10-3,[1]
and negligence, recklessness, and wantonness. On August 16, 1996, Montgomery, Gayfers, and Malcom entered into a pro tanto settlement of these claims, and the trial court accepted this settlement on September 30, 1996, and dismissed those defendants. Thereafter, the remaining defendants moved for a summary judgment. On June 18, 1998, the trial court entered summary judgment in favor of the remaining defendants as to all counts. Montgomery appeals from this judgment. This case is before this court pursuant to Ala. Code 1975, § 12-2-7(6).
At about 5:00 p.m. on September 27, 1995, officers J.L. Burch and D.M. Sellers of the City of Montgomery Police Department went to 5740 Bridle Path Lane to execute warrants for the arrest of Robert E. Montgomery. These warrants charged Robert E. Montgomery with theft of property in the third degree and criminal trespass in the third degree.[2] The warrants were issued at the request of David Malcom, an employee in the loss-prevention unit of the Gayfers department store. Malcom obtained an address for Robert E. *Page 307 
Montgomery from Luther Ray Heaton, magistrate for the Montgomery Municipal Court.
The arrest warrants for Malcom's complaints were issued by Magistrate Heaton. Malcom wrote "Robert Emit Montgomery, 5740 Bridle Path Lane," on the affidavits/complaints. However, Heaton typed the name "Robert E. Montgomery" on the affidavits/warrants of arrest. Heaton stated in his deposition that the use of a middle initial in place of the full name is common practice in the Montgomery Municipal Court. Heaton explained that the abbreviation would usually be of little consequence, since the supporting affidavit always accompanies the warrant.
In fact, Robert Avery Montgomery resided at 5740 Bridle Path Lane. When the two officers arrived at Montgomery's house and came to the door, they were met by his mother, Carolyn Montgomery. Officer Burch asked if Robert Montgomery was home and his mother responded, "Robert Montgomery does live here," but she said that he was not at home at that time. Carolyn Montgomery then asked if there was a problem, and Burch explained to her that they had two warrants for her son's arrest. Thereafter, Mrs. Montgomery invited the men inside and said that she would call her son on the cell telephone and have him come home. Burch, who overheard Mrs. Montgomery's telephone call, stated in his deposition that she referred to her son as "Avery." In fact, he testified that Mrs. Montgomery used the name "Avery" several times in his presence. Burch concluded, however, that Mrs. Montgomery's son was, in fact, the person named in the arrest warrants because Mrs. Montgomery clearly understood who the officers were seeking when they first asked if Robert Montgomery lived there.
Both out of courtesy to Mrs. Montgomery and because the documents he carried did not contain a date of birth or a physical description of the suspect, Officer Burch telephoned David Malcom at Gayfers department store to get a physical description of the Robert Montgomery for whom the warrants had been issued. Malcom told Burch that Montgomery was a white male who stood about 5'11" and weighed roughly 170 pounds. Malcom further indicated that Montgomery had black hair that "was kind of curly and hung down" and that he frequently wore a baseball cap. Burch testified that Robert Avery Montgomery was wearing a baseball cap when they arrested him, and he noted that Malcom's description of the man to be arrested "matched [Robert Avery Montgomery] to a T." When the officers told Robert Avery Montgomery that they were there to arrest him, he claimed he had not stolen anything and that they were arresting the wrong man. Officer Sellers acknowledged that he and the Montgomerys may have had a discussion about Robert Montgomery's middle initial. Sellers, however, did not believe he could clarify this question by requesting further identification, since the young man admitted that he was Robert Montgomery and the officers found him at the address on the warrants. The policemen placed Robert Avery Montgomery in custody and transported him to the police station. He spent about four hours in jail while his mother made his bond.
The theft-of-property and criminal-trespass cases were called for trial in the Montgomery Municipal Court on December 5, 1995. At that time, David Malcom informed the trial court that Montgomery was not the person depicted in his store's security videotape and was not the person named in the arrest warrant. Thereafter, the court dismissed both charges against Robert Avery Montgomery.
 I. Whether the Defendants Were Entitled to a Summary Judgment
Montgomery contends that the trial court erred by entering a summary judgment in favor of the defendants on the various causes of action raised in his complaint. *Page 308 
He appears to argue that each of the defendants caused or contributed to his unlawful and illegal detention because they knew he was not the person named in the arrest warrants but nevertheless arrested him. Although Montgomery alleges a number of tort claims and statutory violations, we note that his complaint, if it properly states a claim at all, states a claim of malicious prosecution. Cf. Cutts v. American United Life Insurance Co., 505 So.2d 1211, 1214 (Ala. 1987).
 "The law in Alabama is clear that a plaintiff is not entitled to recover for false arrest or imprisonment where he or she is arrested pursuant to a valid warrant issued by a lawfully authorized person. Blake v. Barton Williams, Inc., 361 So.2d 376 (Ala.Civ.App. 1978). Under such circumstances, `neither the arrest nor the subsequent imprisonment is "false," and, as a consequence, the complaining party's action must be one for malicious prosecution.' Id. at 378."
Ennis v. Beason, 537 So.2d 17, 19 (Ala. 1988).
Each of Montgomery's remaining causes of action arises out of his malicious-prosecution claim. As Roberts and Cusimano observe:
 "The implications of [the] judicial disfavor [that the law fosters for malicious prosecution actions] are not avoided where a litigant brings claims arising [outside] the ambit of malicious prosecution but couched in other terms, such as general allegations of negligence, willfulness, or wantonness, as in Cutts v. American United Life Insurance Co."
M. Roberts and G. Cusimano, Alabama Tort Law Handbook, § 27.0, p. 912 (1990). Accordingly, because the only cause of action properly raised in Montgomery's complaint is his malicious-prosecution claim, we need only to determine whether the trial court properly entered a summary judgment on that count.
 "On review of a summary judgment, the evidence is to be construed in the manner most favorable to the nonmovant, and all doubts are to be resolved against the movant. Motes v. Matthews, 497 So.2d 1121, 1123 (Ala. 1986). Rule 56, A.R.Civ.P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact, and 2) that the moving party is entitled to a judgment as a matter of law. In determining whether a summary judgment was properly entered, the reviewing court must view the motion in a light most favorable to the nonmovant. See Turner v. Systems Fuel, Inc., 475 So.2d 539, 541 (Ala. 1985); Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784
(Ala. 1981). Rule 56 is read in conjunction with the `substantial evidence rule' (§ 12-21-12, Ala. Code 1975), for actions filed on or after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Under the substantial evidence rule, the party opposing a properly supported summary judgment motion must present `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. [of Florida], 547 So.2d 870, 871 (Ala. 1989). More simply stated, `an issue is genuine if reasonable persons could disagree.' Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 481 (1982)."
Franklin v. City of Huntsville, 670 So.2d 848, 849 (Ala. 1995). See also, McDuff v. Turner, 679 So.2d 1071 (Ala.Civ.App. 1996).
Malicious prosecution is established by proving
 "(1) that a judicial proceeding was initiated by [the present defendant] against [the present plaintiff], (2) that the judicial proceeding was instituted without probable cause, (3) that the proceedings *Page 309 
were instituted by [the present defendant] maliciously, (4) that the judicial proceeding had been terminated in favor of [the present plaintiff], and (5) that [the present plaintiff] suffered damage as a proximate cause of the judicial proceeding. Smith v. Wendy's of the South, Inc., 503 So.2d 843, 844 (Ala. 1987)."
Eidson v. Olin Corp., 527 So.2d 1283, 1284 (Ala. 1988). The Eidson court further noted:
 "`Malicious prosecution is an action disfavored in the law.' Cutts v. American United Life Insurance Co., 505 So.2d 1211, 1212 (Ala. 1987). The reason for such disfavor is clear: `[P]ublic policy requires that all persons shall resort freely to the courts for redress of wrongs and to enforce their rights, and that this may be done without the peril of a suit for damages in the event of an unfavorable judgment by jury or judge.' Boothby Realty Co. v. Haywood, 269 Ala. 549, 554, 114 So.2d 555, 559 (1959)."
Id. For this reason,
 "`at the trial of the malicious prosecution action [the malicious prosecution plaintiff has] a strict burden of proving a negative — i.e, the complete absence of . . . probable cause for [the malicious prosecution defendant] to bring the [underlying judicial proceedings against the malicious prosecution plaintiff].'"
Ford New Holland, Inc. v. Beaty, 602 So.2d 1198, 1202 (Ala. 1992) (citing Eidson, supra, at 1285) (emphasis added).
Concerning the second element of a malicious-prosecution claim, the supreme court has explained:
 "`Probable cause is defined as "`[a] reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged.'" Parisian Co. v. Williams, 203 Ala. 378, 83 So. 122, 127
(1919).
 "The question is not whether the [malicious prosecution] plaintiff was guilty of the thing charged, but whether the [malicious prosecution] defendant acted in good faith on the appearance of things." Birwood Paper Co. v. Damsky, 285 Ala. 127, 134-35, 229 So.2d 514, 521 (1969).
"`. . . .
 "`The test that this Court must apply when reviewing the lack-of-probable-cause element in a malicious prosecution case in which summary judgment has been granted to a defendant is as follows: Can one or more undisputed facts be found in the record below establishing that the defendant acted in good faith on the appearance of things as they existed when suit was filed, based upon direct evidence, or upon circumstantial evidence and inferences that can reasonably be drawn therefrom.'
"Eidson at 1285 (emphasis added in Eidson)."
Lynch v. Green Tree Acceptance, Inc., 575 So.2d 1068, 1069-70
(Ala. 1991).
Where a claim of malicious prosecution originates from a prior criminal case, malicious or evil intent may be implied from circumstances in which a prosecution was begun for any purpose other than a bona fide purpose to bring an accused to punishment as a violator of the criminal law. National Sec. Fire Cas. Co. v. Bowen, 447 So.2d 133, 140 (Ala. 1983); Birwood Paper Co. v. Damsky, 285 Ala. 127, 229 So.2d 514 (1969).
Viewing the evidence set out above in the light most favorable to Montgomery, we find it clear that Officers Burch and Sellers had probable cause to arrest Robert Avery Montgomery and that the trial court properly granted their motion for summary judgment. Eidson, supra; New Ford Holland, supra. His first name, last name, and address corresponded with the information shown on the arrest warrants and complaints, and his mother confirmed that "Robert Montgomery lived there." Finally, Robert Avery Montgomery closely matched the physical description that David Malcom gave to Officer Burch. *Page 310 
These facts and circumstances were sufficient to warrant Burch and Sellers's belief that Robert Avery Montgomery had committed a misdemeanor. Bush v. State, 523 So.2d 538, 543 (Ala.Crim.App. 1988). It was not until he appeared in the Montgomery Municipal Court that the mistaken identity became apparent.
The trial court also properly entered the summary judgment in favor of the individual defendant D. E. Fike, who the plaintiff Montgomery alleged assisted in his arrest. Montgomery admitted in his deposition that Fike was not one of the officers who initially took him into custody, and Montgomery conceded that he did not even know who Fike was. The record reflects that the Fike was a correctional officer at the Montgomery Police Department. His job is processing inmates, booking and fingerprinting them, and serving them dinner. In fact, Fike had no involvement in Montgomery's arrest. Furthermore, a malicious-prosecution action cannot lie against a municipality, because a municipality cannot act with malice. Caldwell v. City of Tallassee, 679 So.2d 1125 (Ala.Civ.App. 1996).
 II. Whether The Defendants Are Entitled to Immunity Under § 6-5-338
Montgomery contends that the City of Montgomery and its police officers were not entitled to immunity under Ala. Code 1975, § 6-5-338, for their discretionary acts. He first argues that the acts of Officers Burch and Sellers were willful, were malicious, were taken in bad faith, or were simply illegal, and that these acts were not entitled to immunity under § 6-5-338. Finally, Montgomery appears to argue that § 6-5-338 grants immunity only to peace officers, but does not actually grant immunity to municipalities.
State officers and employees, individually and in their official capacities, are absolutely immune from suit when the action is, in effect, one against the state. Art. I, § 14, Ala. Const. 1901; Phillips v. Thomas, 555 So.2d 81 (Ala. 1989). The Alabama Constitution does not grant such immunity to municipalities and their agents. However, in 1994 the legislature enacted Ala. Code 1975, § 6-5-338, which provides, in pertinent part, as follows:
 "(a) Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.
 "(b) This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers . . . ."
Id. (emphasis added).
Alabama law has defined "discretionary acts" as "`[t]hose acts [as to which] there is no hard and fast rule as to course of conduct that one must or must not take' and those requiring `exercise in judgment and choice and [involving] what is just and proper under the circumstances.' Black's Law Dictionary 467 (6th ed. 1990); see *Page 311 
also Smith v. Arnold, 564 So.2d 873, 876 (Ala. 1990)." L.S.B. v. Howard,659 So.2d 43, 44 (Ala. 1995). Discretionary acts require "constant decision making and judgment." Phillips v. Thomas, 555 So.2d 81, 85 (Ala. 1989); L.S.B. v. Howard, supra.
In White v. Birchfield, 582 So.2d 1085 (Ala. 1991), a case decided before the enactment of Ala. Code 1975, § 6-5-338, the supreme court identified a number of factors a trial court may consider in determining whether a law-enforcement officer was performing a discretionary function. Those factors included: (1) the nature and importance of the function that the officer was performing; (2) the extent to which the imposition of liability would impair the free exercise of discretion by the officer; and (3) the likelihood that harm would result to members of the public if the action was taken. Employing this analysis, we think it clear that the decision to arrest the plaintiff was a discretionary function and that § 6-5-338 gave Officers Burch and Sellers immunity from liability.
In Couch v. City of Sheffield, 708 So.2d 144 (Ala. 1998), a police officer arrested Couch for public intoxication. Couch was acquitted of the charge in the municipal court; he sued the officer and the City of Sheffield for intentional and malicious false imprisonment and false arrest, malicious prosecution, and a violation of his civil rights, seeking damages under 42 U.S.C. § 1983. The supreme court affirmed the trial court's entry of a summary judgment in favor of the defendants, noting that Couch had failed to rebut the officer's affidavit alleging that Couch's demeanor, his appearance, and his location outside a lounge reputed to be a hangout for drug users and dealers provided probable cause for the officer to arrest him. The supreme court further noted that § 6-5-338 extended discretionary immunity to a municipal police officer "unless the officer's conduct is so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith." Id. (citation omitted).
In Wright v. Wynn, 682 So.2d 1 (Ala. 1996), Wynn stopped in his daughter's driveway, got out of his vehicle, and walked onto her porch. At about the same time, Wright, a state trooper, had begun pursuing a speeding truck whose driver was trying to elude him. The truck pulled behind Wynn's vehicle and the driver got out and ran toward Wynn. Wynn called to the man, who did not stop; Wynn then chased him and threw a sling blade at him. Wright then got out of his car and ran toward Wynn with his gun aimed at him, and he threatened to shoot Wynn if he did not raise his hands. Wright cursed Wynn and prevented him from explaining what had happened, and when Wynn's son-in-law tried to explain who Wynn was, Wright told him to "`shut up and get [his] ass back in the house,'" or else that Wright would lock him up, as well. Thereafter, Wynn sought damages for false imprisonment and assault and battery. After a jury trial, Wynn was awarded $20,000.
In reversing the judgment of the trial court, the supreme court wrote, in pertinent part, as follows:
 "After carefully reviewing the record and the briefs, we agree with Wright that the judgment must be reversed, because we agree that Wright was entitled to a judgment as a matter of law on the false imprisonment claim. The undisputed evidence indicates that Wright made a tragic mistake in detaining and arresting Wynn; however, Wright is protected under the doctrine of discretionary function immunity from any liability for that mistake in identification. Discretionary acts have been defined as those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances. See L.S.B. v. Howard, 659 So.2d 43 (Ala. 1995). Clearly, Wright's duties as a law enforcement officer required him to make a split-second identification *Page 312 
under difficult circumstances. Although, regrettably, Wright made the wrong decision in arresting Wynn, his decision nonetheless falls within the definition of a `discretionary act' as discussed in our cases . . . ."
Id. (emphasis added).
We therefore hold that Officers Burch and Sellers were engaging in a discretionary function when they arrested the plaintiff and that therefore, under Ala. Code 1975, § 6-5-338, immune from liability. The facts relating to the identity of Montgomery that were available to the officers at the time of the arrest were conflicting. This sort of difficult identification is precisely the type of activity that the supreme court considered to be a "discretionary function" in Wynn, supra, and it will not give rise to liability. Furthermore, for the reasons set forth in Part I of this opinion, we hold that Burch and Sellers had probable cause to arrest the plaintiff. They did not act willfully, maliciously, or in bad faith, and their conduct was not illegal. Accordingly, Burch and Sellers were immune from liability pursuant to § 6-5-338. Furthermore, contrary to the arguments of Montgomery, the plain language of Ala. Code 1975, § 6-5-338(b), clearly extends discretionary-function immunity to the City of Montgomery, Burch and Sellers's employer.
 III. Whether the City of Montgomery is Entitled to Substantive Immunity Under § 11-47-190 "There exists a narrow exception to the general rule that a municipality is chargeable with the negligence of its agents or employees performing in the line and scope of their duty. Rich [v. City of Mobile], 410 So.2d 385. In Rich, our Supreme Court has stated that public policy considerations
 "`override the general rule and prevent the imposition of a legal duty, the breach of which imposes liability, in those narrow areas of governmental activities essential to the well-being of the governed, where the imposition of liability can be reasonably calculated to materially thwart the City's legitimate efforts to provide such public services.'
 "Rich, 410 So.2d at 387. This exception, commonly known as the substantive immunity rule, is to `be given operative effect only in the context of those public service activities of governmental entities . . . so laden with the public interest as to outweigh the incidental duty to the individual citizens.' Rich, 410 So.2d at 387-88; see also Hilliard [v. City of Huntsville], 585 So.2d 889 . . . ."
City of Mobile v. Sullivan, 667 So.2d 122, 125-26 (Ala.Civ.App. 1995).
Alabama courts have recognized that the "principles of substantive immunity are particularly applicable to a case such as this one, where an officer is required to make difficult decisions on the spur of the moment." Flint v. City of Ozark, 652 So.2d 245, 246
(Ala. 1994). Officers must be allowed to make decisions based on the circumstances of the case rather than on the potential for personal liability. Accordingly, we conclude that the City of Montgomery was also immune from liability under the provisions of Ala. Code 1975, § 11-47-190.
Therefore, the trial court's summary judgment in favor of the City of Montgomery and the police officers is affirmed.
AFFIRMED.
Yates and Thompson, JJ., concur.
Monroe, J., concurs in the result.
Robertson, P.J., concurs in the result only.
[1] Ala. Code 1975, § 15-10-3, requires an arresting officer to have a warrant for the person to be arrested unless that person is alleged to have committed a felony or unless he committed a misdemeanor in the officer's presence. However, the defendants had a warrant for the plaintiff's arrest. Thus, it appears that the plaintiff attempted to raise his false-arrest claim twice.
[2] Robert Emit Montgomery was a chronic shoplifter, and Gayfers had had him enjoined from coming onto its premises. The criminal-trespass charge in this case resulted from Montgomery's returning to the property of the Gayfers department store and violating the injunction. *Page 968