This action arises out of an automobile accident that occurred in 1997 when a vehicle operated by Bo Coon was struck by a vehicle operated by Michael Perkins, injuring Bo Coon and four minors who were passengers in Coon's vehicle — Lee Coon, Ashley Dantzler, Lindsey Maraman, and Jason Shaw. The collision also killed a fifth minor in the Coon vehicle, Philip Heath Norris. In the resulting action seeking damages for wrongful death, personal injuries, and property damage against Michael Perkins, the City of Montgomery ("the City"), then mayor of Montgomery Emory Folmar, Montgomery Police Chief John Wilson, and police officer Thomas Perkins ("Officer Perkins"), the trial court entered a summary judgment for all of the defendants except Michael Perkins (those defendants hereinafter collectively referred to as the "City defendants"). We affirm in part, reverse in part, and remand.
The events leading to this action began in 1993, when Michael Perkins was convicted of driving while under the influence of *Page 151 
alcohol. As a result of that conviction, his driver's license was suspended or revoked. However, he continued operating motor vehicles thereafter, without a license.[1]
In 1995, the Legislature enacted the Safe Streets Act of 1995, Act No. 95-580, Ala. Acts 1995, effective July 31, 1995, codified at Ala. Code 1975, § 32-5A-200 et seq. ("the Act"). (Act No. 95-580 was subsequently repealed by Act No. 98-470, Ala. Acts 1998, effective May 1, 1998.) The Act provided in pertinent part:
 "[§ 2] The Legislature finds and declares all of the following:
 "(1) Driving a motor vehicle on the public streets and highways is a privilege, not a right.
 "(2) Of all drivers involved in fatal accidents, a driver with a suspended license is more likely to be involved in a fatal accident than a properly licensed driver.
 "(3) Alabamians who comply with the law are frequently victims of traffic accidents caused by unlicensed drivers. These innocent victims suffer considerable pain and property loss at the hands of people who flaunt the law.
 "(4) A large number of persons whose driving privilege has been suspended or revoked continue to drive regardless of the law.
 "(5) It is necessary and appropriate to take additional steps to prevent unlicensed drivers from driving, including the civil forfeiture of vehicles used by unlicensed drivers. The state has a critical interest in enforcing its traffic laws and in keeping unlicensed drivers from illegally driving. Seizing the vehicles used by unlicensed drivers serves a significant governmental and public interest, namely the protection of the health, safety, and welfare of Alabamians from the harm of unlicensed drivers, who are involved in a disproportionate number of traffic incidents, and the avoidance of the associated destruction and damage to lives and property.
". . . .
 "[§ 4] (a) Notwithstanding any other provision of law, and except as otherwise provided in this section, a motor vehicle is subject to forfeiture as a nuisance if it is driven on a highway of this state and all of the following conditions exist:
 "(1) The motor vehicle is registered in the name of the driver.
 "(2) The motor vehicle is driven by a person whose license or license privileges is suspended or revoked at the time he or she was stopped for having been previously convicted of driving under the influence of alcohol or a controlled substance, as defined in Section 32-5A-191 of the Code of Alabama 1975.
". . . .
 "(c)(1) If a driver is unable to produce a valid driver's license on the demand of a law enforcement officer, the vehicle shall be impounded regardless of ownership, unless the peace officer is reasonably able, by other means, to verify that the driver is properly licensed. Prior to impounding a vehicle, a law enforcement officer shall make a reasonable attempt to verify the license status of a driver who claims to be properly licensed, but who is unable to produce the license on demand of the law enforcement officer.
 "(2) A law enforcement officer shall not impound a vehicle pursuant to this subdivision if the license of the driver expired within the preceding 90 days and the driver would otherwise have been properly licensed. *Page 152 
 "(3) A registered or legal owner of record including the holder of any lien or encumbrance on the vehicle at the time of impoundment may request a hearing to determine the validity of the impoundment pursuant to subsection (o).
 "(4) If the driver of a vehicle impounded pursuant to this subdivision was not a registered owner of the vehicle at the time of impoundment, or if the driver of the vehicle was a registered owner of the vehicle at the time of impoundment, but the driver does not have a previous conviction for a violation of Section 32-5A-191 of the Code of Alabama 1975, the vehicle shall be released and is not subject to forfeiture."
On August 1, 1997, Perkins's driving privilege had not been restored; nevertheless, on that day at 4:18 p.m. he was operating a motor vehicle in the City. At that time, he was stopped by Officer Perkins, because his automobile was emitting smoke.[2] When Perkins could not produce a driver's license, Officer Perkins issued two Uniform Traffic Tickets and Complaints ("UTTCs"), citing Perkins for "excessive smoke" and for "driving without first obtaining a driver's license." Despite Perkins's failure to produce a driver's license, Officer Perkins did not impound the vehicle. Instead, he left the scene, allowing Perkins to leave in his vehicle.
After the traffic stop, Perkins began consuming alcohol and continued to operate his vehicle. Approximately five hours after the stop, Perkins's automobile struck Coon's automobile, resulting in one person's death and injuring five others, all occupants of Coon's vehicle. At the time of the accident, Perkins's blood-alcohol level substantially exceeded the limit then set by Ala. Code 1975, § 32-5A-191(a)(1).[3]
This action, seeking damages for wrongful-death, personal injuries, and property damage, was brought by Wanda Norris and Philip Norris, on behalf of Philip Heath Norris, deceased; Coon; and the injured passengers, suing by and through one, or both, of their respective parents. The complaint contained counts against the City defendants in their official and individual capacities, alleging negligence against all the City defendants, and alleging wantonness against then Mayor Folmar, Chief Wilson, and Officer Perkins. More specifically, it alleged that Officer Perkins had breached a duty imposed by the Act to impound Perkins's vehicle, and that the breach of that duty had resulted in death, injuries, and damage to the plaintiffs. It also asserted claims against Perkins alleging negligence and wantonness.
The City defendants moved for a summary judgment, contending that they were immune from suit under various theories of governmental immunity. The trial court granted their motion.[4] On appeal, the Norrises and the other appellants (hereinafter referred to collectively as "the Norrises") challenge the applicability of the doctrine of governmental immunity to the claims asserted against the City defendants.
The City defendants first argue that they are entitled to absolute immunity, based on Ala. Const. 1901, § 14. "Generally, of course," § 14 shields "the State of Alabama and its officers and political *Page 153 
subdivisions" from suit. Williams v. Crook, 741 So.2d 1074, 1076 (Ala. 1999) (emphasis added). However, "[t]hat constitutional immunity doesnot extend to municipalities." Id. (Emphasis added.) Thus, the City defendants' first argument has no merit.
They next contend that they are entitled to immunity under Ala. Code 1975, § 6-5-338(a), which provides:
 "(a) Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."
(Emphasis added.)
Thus, this statute shields police officers from tort liability fordiscretionary acts performed "within the line and scope of [their] law enforcement duties." Id.; Williams, 741 So.2d at 1076. "Alabama law has defined `discretionary acts' as `"[t]hose acts [as to which] there is nohard and fast rule as to course of conduct that one must or must not take" and those requiring "exercise in judgment and choice and [involving] what is just and proper under the circumstances."'"Montgomery v. City of Montgomery, 732 So.2d 305, 310 (Ala.Civ.App. 1999) (emphasis added). "[U]nder the distinction between ministerial and discretionary functions, `the official is immune only where that which he does in the performance of his lawful duties requires "personal deliberation, decision and judgment."'" White v. Birchfield,582 So.2d 1085, 1087 (Ala. 1991). The Norrises contend that § 6-5-338
does not apply to Officer Perkins's failure to impound Perkins's vehicle, because, they insist, the Act imposed upon Officer Perkins a mandatory, nondiscretionary duty to impound Perkins's vehicle. This claim is essentially one of "statutory negligence."[5]
 I. Statutory Negligence
To succeed on a claim of "statutory negligence" against a municipality, a plaintiff must first show the existence of a statute creating a mandatory duty to perform. The plaintiff must also demonstrate that he or she is among the class of persons the "statute was enacted to protect"; that the injuries were "of a type contemplated by the statute"; that the defendant "violated the statute"; and that the plaintiff's injuries proximately resulted from the violation. Thetford v. City ofClanton, *Page 154 605 So.2d 835, 841-42 (Ala. 1992). Where these elements exist, discretionary-function immunity will not shield the actors or their supervisors from liability. This is so because the statute itself removes the discretion on which the immunity is based.
The dispute in Thetford — in which this rule was applied — began when City of Clanton police officer Randy Morris investigated a report of domestic violence at the home of Michael and Shirley Ann Banks. Id. at 836-37. There, he discovered evidence that Mrs. Banks had suffered physical abuse at the hands of her husband, but he did not file a report of the incident as required by Ala. Code 1975, §15-10-3(b).[6] When Mrs. Banks was subsequently beaten to death by Mr. Banks, Mary Thetford, the personal representative of Shirley Ann Banks, brought a wrongful-death action. The action alleged "that the [City of] Clanton police were guilty of statutory negligence . . . because they failed to comply with § 15-10-3(b)." 605 So.2d at 842.
The trial court entered a summary judgment for the City of Clanton, and Thetford appealed. The dispositive issue on appeal as to the liability of the City of Clanton was proximate cause; the other elements of statutory negligence had been satisfied. Id. at 845 (Ingram, J., dissenting). More specifically, the issue as to the applicability of statutory negligence was "whether the City's failure to comply with the terms of the statute proximately caused the [decedent's death]." Id.
This Court affirmed the summary judgment. In doing so, it noted that although the statute "requires the officer to file a report, [it] does not say where and does not say what should be done with the report." Id. at 842. Thus, it held, there was no basis on which a "jury could . . . conclude that the officer's failure to file the report required by the statute proximately caused the death of this victim of abuse." Id.[7]
The Act at issue in this case exhibited none of the ambiguity that concerned the Court in Thetford. It expressly identified all the factors necessary to establish a claim of statutory negligence. First, the Act stated that if a driver, because of a prior conviction of "driving under the influence of alcohol or a controlled substance," cannot produce a valid operator's license upon the demand of a "law enforcement officer," then "the vehicle shall be impounded regardless of ownership." Section 4(a)(2) and (c)(1) (emphasis added). Thus, the Act created and imposed upon law-enforcement officials a mandatory duty to perform.
Second, the Legislature found and expressly declared in § 2 of the Act that "a driver with a suspended license is more likely to be involved in a fatal accident than a properly licensed driver"; that "Alabamians who comply with the law are frequently victims of traffic accidents caused by unlicensed drivers"; and that "[a] large number of persons whose driving privilege has been suspended or *Page 155 
revoked continue to drive regardless of the law." Thus, the Norrises, who were injured at the hands of Perkins, a driver whose driving privileges had been suspended or revoked because of a conviction for driving under the influence but who had, nevertheless, illegally operated a motor vehicle for four years preceding the accident, are clearly within the class of persons the Legislature sought to protect, and they suffered injuries of the type contemplated by the statute.
Third, unlike the statute in Thetford, the Act provided the basis for a finding of proximate cause.[8] Section 4(c)(4) authorized the prompt release of an impounded vehicle to the registered owner, provided that the registered owner was not also the driver of the vehicle. The UTTCs issued in this case, however, list Perkins as the owner of the vehicle. In other words, the facts suggest that, had the vehicle been impounded as required by the Act, Perkins could not have procured its prompt release. If he had not, then he would not have been using it some five hours later when he collided with Coon's automobile. On these facts, a jury might reasonably conclude that Officer Perkins's violation of the Act proximately caused the death and the injuries that are the basis of this action. Cf. Williams, supra, 741 So.2d at 1075 (the discretionary-function "`immunity from tort liability' granted by §6-5-338(a) to the driver of an `authorized emergency vehicle' applies only when the driver is using an audible signal meeting statutory requirements and is meeting the requirements of any law requiring that visual signals be used on emergency vehicles"); City of Birmingham v.Benson, 631 So.2d 902, 904 (Ala. 1993) (police officer was not immune from suit for failing to provide protection, where an internal affairs investigator concluded that he had "violated rules and regulations of the department, that he had neglected his duties, [and] that he had failed to take appropriate action").
Because discretionary-function immunity evaporates upon the violation of a statute imposing a mandatory duty, the facts of this case support a claim of statutory negligence, which is not barred by the doctrine of discretionary-function immunity. For these reasons, the trial court erred in entering a summary judgment for the City defendants (with the exception of then Mayor Folmar, as discussed in Part III of this opinion) on the claim of statutory negligence. Insofar as it did so, the judgment is reversed. However, it does not follow that the immunity defense to the Norrises' wantonness claims is subject to the same infirmity.
 II. Wantonness
The theory of the Norrises' wantonness claim against the individual defendants is that they had a "practice and/or policy of . . . not enforcing the Safe Streets Act, by returning automobiles to unlicensed drivers after they are stopped." Brief of Appellants, at 18 (emphasis added). Specifically, their amended complaint alleged:
 "32. Defendant, [Officer] Perkins, acting individually, and/or as an officer of the State Alabama, and/or on behalf of and/or at the instruction of, Defendants, Folmar and/or Wilson, had a duty to impound the subject vehicle. *Page 156 
 "[33]. Instead, Defendants, [Officer] Perkins, Folmar, and/or Wilson, negligently, wantonly and/or willfully gave the vehicle to Defendant, Michael Perkins.
 "[34]. In doing so, Defendant, [Officer] Perkins, acted in accordance with the practice and/or policy of Defendants, Folmar and/or Wilson, of violating the law by returning automobiles to drivers who have been stopped and are unable to produce a valid driver's license."
The Norrises define "wantonness" as follows:
 "`Wantonness is the conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such an act or omission of such duty an injury will likely or probably result. Before a party can be said to be guilty of wanton conduct, it must be shown that with reckless indifference to the consequences he either consciously or intentionally did some wrongful act or consciously omitted some known duty which produced the injury.'"
Brief of Appellants, at 17 (quoting Alabama Pattern (Civil) JuryInstructions, 29.00 (2d ed. 1993)). This is a correct statement of the law, but it has no application under the facts of this case.[9]
As we explained in Part I of this opinion, the City defendants' liability is grounded in statutory negligence. In other words, the City defendants would be immune from suit, but for the language of the Act, which specifically made impoundment non-discretionary. Were it not for the Act, the City defendants would have had some discretion in deciding whether to release Perkins to drive his vehicle. See Flint v. City ofOzark, 652 So.2d 245, 245 (Ala. 1994) ("police officers may [not] be held liable for failing to arrest an underage person who has been consuming alcohol, but who the officers do not know is intoxicated"); Nunnelee v.City of Decatur, 643 So.2d 543 (Ala. 1993) (police officers had discretion not to arrest a driver who had, in fact, been drinking, but had passed a field-sobriety test, where officers did not know the driver was intoxicated). Indeed, the Norrises rely specifically on thelegislative findings, as stated in § 2, as a surrogate for the City defendants' actual knowledge. In particular, they state: "The Safe Streets Act itself provides the necessary intent element especially when it is undisputed that . . . Perkins' driver's license had been revoked for a previous DUI, and that during the preceding 28 months he had received five tickets for driving without a license from the City of Montgomery alone." Brief of Appellants, at 17 (emphasis added). InThetford, this Court recognized a cause of action against a municipality and its law-enforcement officials for statutory negligence; it did not recognize one for statutory wantonness. Even more significantly, §6-5-338(a), which immunizes peace officers from tort liability for conduct involving the exercise of discretion, makes no exception forwantonness.
The trial court did not err, therefore, in entering a summary judgment on the wantonness claims. As to those claims, the judgment is affirmed.
 III. Claims Against Mayor Folmar
The claims against then Mayor Folmar are based on the theory of respondeat superior. However, "a municipality's chief executive is not vicariously liable for the misconduct of his or her subordinates." Newtonv. Town of Columbia, *Page 157 695 So.2d 1213, 1218 (Ala.Civ.App. 1997). "Thus, even if the trial court entered the summary judgment in favor of the mayor on the ground of . . . immunity, which we have concluded is not applicable in this instance, its error is harmless and not reversible, because the judgment is correct for other reasons." Id. at 1218-19.
 IV. Summary
In summary, the City, Chief Wilson, and Officer Perkins are not immune from liability in negligence for the specific act of allowing Perkins to maintain control of his vehicle after the stop on August 1, 1997. In other words, the discretionary-function immunity afforded by §6-5-338(a) does not shield them from liability in negligence for that non-discretionary act. As to the negligence claims, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Moore, C.J., and Houston, J., concur.
Lyons and Johnstone, JJ., concur in part and concur in the result in part.
[1] The record contains a number of traffic tickets issued to Perkins from March 1995 to August 1, 1997, by the City for driving without a license.
[2] Officer Perkins and Michael Perkins are not related.
[3] The limit before a 1995 amendment to § 32-5A-191(a)(1) was 0.10 percent. That amendment, effective August 1, 1995, lowered the limit to 0.08 percent.
[4] The summary judgment did not resolve the claims against Perkins. However, the order granting the City defendants' motion was certified as a final judgment, pursuant to Ala.R.Civ.P. 54(b).
[5] The City defendants strenuously argue that they were unaware of the existence of the Act. However, "[l]aw enforcement officers are charged with knowledge of the law." Doctor v. State, 596 So.2d 442, 447 (Fla. 1992); see also Sadie v. State, 488 So.2d 1368, 1379 (Ala.Crim.App. 1986).
[6] At the time Thetford was decided, § 15-10-3(b) provided: "Whenever a law enforcement officer investigates an allegation of family violence, whether or not an arrest is made, the officer shall make a written report of the alleged incident, including a statement of the complaint, and the disposition of the case." Section 15-10-3 was amended in 1995; as a result of that amendment what was § 15-10-3(b) became § 15-10-3(c) and the word "When" was substituted for the word "Whenever."
[7] Three Justices were of the opinion that there was sufficient evidence of proximate cause to submit the claim to a jury. Id. at 845 (Ingram, J., concurring in part and dissenting in part, with Adams, J., and Houston, J., concurring in Justice Ingram's special writing).
[8] "[I]t is well established that the question of proximate cause is almost always a question of fact to be determined by the jury, and that the question must go to the jury if reasonable inferences from the evidence support the plaintiff's evidence." Lemond Constr. Co. v.Wheeler, 669 So.2d 855, 862 (Ala. 1995), cert. denied, 516 U.S. 1146
(1996).
[9] The "knowledge" of the defendant is "the sine qua non of wantonness." Ricketts v. Norfolk Southern Ry., 686 So.2d 1100, 1106
(Ala. 1996) (quoting Henderson v. Alabama Power Co., 627 So.2d 878, 882
(Ala. 1993)).