PARKER, Justice.
Jerome Coleman and the City of Birmingham (“the City”) (hereinafter collectively referred to as “the petitioners”) petition this Court for a writ of mandamus directing the Jefferson Circuit Court (“the circuit court”) to vacate its judgment denying the petitioners’ motion for a summary judgment and to enter a judgment in their favor based on State-agent immunity. We grant the petition and issue the writ.

Facts and Procedural History

The facts are undisputed. Coleman is employed by the City as a police officer with the Birmingham Police Department (“the BPD”). On May 29, 2010, the BPD received a report that a vehicle was on fire on Interstate 459 (“1-459”). Coleman responded in a marked BPD vehicle that was equipped with emergency lights and a siren. Coleman was traveling west on Highway 280 toward the intersection of Highway 280 and the south access ramp of I-459 (“the intersection”) making continuous use of the BPD vehicle’s emergency lights; Coleman did not make use of the siren on the BPD vehicle while driving west on Highway 280. James Higginbotham, a firefighter employed by the Birmingham Fire and Rescue Service (“BFRS”), was responding to the same report in a BFRS engine and was following approximately 500 feet behind Coleman also heading west on Highway 280 toward the intersection; the emergency lights and siren on the BFRS engine were continuously on while Higginbotham was traveling west on Highway 280.
Coleman reached the intersection and proceeded to drive “up to the median (center) in front of the turn lanes in the di *753 rection of the I[-]459 South access ramp.” Petition, Exhibit A, at pp. 3-4. Coleman did not drive through the intersection at that time, but stopped short of the eastbound lanes of Highway 280 in the median. The traffic lights controlling the westbound Highway 280 turn lanes leading to the 1-459 south access ramp, upon which Coleman was traveling, were red; Coleman had to drive through a red light in order to enter the median. Coleman “had [his] emergency lights on and had [his] siren make a yelping sound to alert oncoming traffic.” Whatley’s response, Tab D, unmarked exhibit A, at p. 4. Coleman made use of the siren on the BPD vehicle, but he did not make continuous use of the siren. In response to Coleman’s maneuver, the eastbound oncoming traffic on Highway 280 came to a halt in all but one of the eastbound lanes. Coleman sought to stop the eastbound traffic of Highway 280 so that Higginbotham, who was making continuous use of the emergency lights and siren on the BFRS engine, could navigate the BFRS engine he was driving into the intersection, across the eastbound lanes of Highway 280, and onto the south access ramp of 1-459.
Higginbotham approached the intersection making continuous use of the BFRS engine’s emergency lights and siren and entered the intersection, passing the BPD vehicle Coleman was driving, which was stopped in the median. As Higginbotham was passing through the intersection, the BFRS engine Higginbotham was driving was struck by a large commercial truck owned by Allen Tree Service and being driven by Eric Whatley. The traffic signal controlling the eastbound Highway 280 traffic, from which direction Whatley was traveling, was green at the time of the accident. In his deposition testimony, Coleman testified that it was possible that Whatley could have been too far away from the intersection at the time Coleman “yelped” the siren of the BPD vehicle he was driving to hear the “yelp” of the siren. There is nothing in the record to indicate whether Whatley actually heard the “yelp” of the siren of the BPD vehicle Coleman was driving or the continuous siren of the BFRS engine Higginbotham was driving. Whatley sustained injuries as a result of the accident.
Coleman never drove the BPD vehicle into the path of the large commercial truck Whatley was driving. Neither did the BPD vehicle Coleman was driving ever come into contact with the truck Whatley was driving.
On February 2, 2011, Whatley sued Higginbotham, the City, and several fictitiously named defendants. Whatley asserted claims of negligence and wantonness against Higginbotham and vicarious liability against the City. On September 7, 2011, Whatley filed an amended complaint adding Coleman as a defendant and asserting claims of negligence and wantonness against Coleman. On October 10, 2011, Coleman filed an answer denying all the allegations in Whatley’s complaint and raising the affirmative defense of State-agent immunity.
On February 4, 2013, the petitioners filed a motion for a summary judgment.[1] The petitioners argued that Coleman was immune from Whatley’s action against Coleman pursuant to § 6-5-338, Ala.Code 1975, and the doctrine of State-agent immunity set forth in Ex parte Cranman, 792 So.2d 392 (Ala.2000), as modified by Hollis v. City of Brighton, 950 So.2d 300 (Ala.2006). Specifically, the petitioners argued that Coleman was entitled to State-agent immunity because he was acting in *754 accordance with § 32-5A-7, Ala.Code 1975, which states, in pertinent part:
“(a) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.
“(b) The driver of an authorized emergency vehicle may:
“(1) Park or stand, irrespective of the provisions of this chapter;
“(2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;
“(3) Exceed the maximum speed limits so long as he does not endanger life or property;
“(4) Disregard regulations governing direction of movement or turning in specified directions.
“(c) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of an audible signal meeting the requirements of Section 32-5-213 and visual requirements of any laws of this state requiring visual signals on emergency vehicles.”
The petitioners alternatively argued that, even if Coleman is not entitled to State-agent immunity, the petitioners were entitled “to judgment as a matter of law because [Whatley] cannot produce substantial evidence proving each element of negligence,” specifically the element of proximate causation. On February 27, 2013, Whatley filed a response to the petitioners’ summary-judgment motion arguing that Coleman was not entitled to State-agent immunity because he did not comply with § 32-5A-7 by simply “yelping” the siren of the BPD vehicle he was driving; Whatley argued that § 32-5A-7 required Coleman to make continuous use of the siren of the BPD vehicle Coleman was driving.
On March 12, 2013, the circuit court denied the petitioners’ summary-judgment motion, stating:
“Pending is a motion for summary judgment, filed by defendant Jerome Coleman, a Birmingham police officer, and defendant the City of Birmingham. [Whatley] opposes this motion.
“The defendants’ motion for summary judgment is first based on the doctrine of State-agent immunity, Ala.Code [1975,] § 6-5-338, has long provided such immunity to peace officers of this State. As made clear in Hollis v. City of Brighton, 950 So.2d 300, 308-09 (Ala.2006), the analysis of immunity under this statute blends with the State-agent immunity analysis that comes from Ex parte Cranman, 792 So.2d 392 (Ala.2000), and Ex parte Butts, 775 So.2d 173 (Ala.2000).
“As recognized in Hollis, ‘immune category 4 of the Cranman restatement’ provides that ‘[a] State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent’s ... exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers’ arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala.Code 1975.’ Hollis v. City of Brighton, 950 So.2d at 309.
“Given the particular circumstances of this dispute, this [c]ourt also looks to Blackwood v. City of Hanceville, 936 *755 So.2d 495 (Ala.2006). While it predates the synthesis of analyses recognized in Hollis, the Blackwood case was very similar to the case here, as it was a suit brought by a passenger against a city police officer, relating to a collision that occurred while the officer was responding to an emergency call to report to the scene of an automobile accident.
“In reversing summary judgment, the Blackwood court provided the following framework that guides this [cjourt here:
“ ‘We need not decide whether or how the difference between the language of § 6-5-338(3) and the language of the Cranman restatement might need to be further reconciled, because the conduct for which Conner is seeking immunity is the driving of an authorized emergency vehicle in response to an emergency call. In such a case, the immunity afforded the peace officer under either description of immune conduct is subject to, and limited by, the conditions imposed by [Ala. Code 1975,] § 32-5A-7. In the particular settings described by § 32-5A-7(a), the legislature has acted to restrain the manner in which the driver of the emergency vehicle may exercise his or her discretion and judgment.’
“Blackwood, 936 So.2d at 505-06.
“This [c]ourt thus turns to Ala.Code [1975,] § 32-5A-7, which provides that a police officer, ‘when responding to an emergency call,’ may park in an intersection and halt traffic, but only if his police vehicle ‘is making use of an audible signal meeting the requirements of Section 32-5-213 and visual requirements of any laws of this state requiring visual signals on emergency vehicles.’
“The fact is undisputed that defendant Coleman’s siren was not continually on while he was stopped; rather, he had the siren emit only one short burst, or ‘yelp,’ to stop oncoming traffic. The legal question comes down to whether a single siren ‘yelp’ meets the requirement of Ala.Code [1975,] § 32-5A-7. This [c]ourt finds that at least under the circumstances of this case, an isolated yelp does not suffice.
“This conclusion may well be different had the collision occurred on a two-lane secondary road, where many fewer vehicles go much more slowly. On Highway 280, however, which is a very wide, mul-ti-lane U.S. highway bearing many, many vehicles at any time, one yelp may well not be reasonable and thus may not be sufficient to meet the requirements of the law.
“This [c]ourt therefore finds that summary judgment in favor of these defendants cannot be based on immunity grounds.
“The defendants also argue that summary judgment in their favor is proper because any negligence on the part of defendant Coleman could not have been the proximate cause of the accident. It is true that [Whatley] did not collide with Coleman’s vehicle, crashing instead into a fire engine driven by codefendant Higginbotham. Summary judgment on this basis is also improper, however, because this may well have been a situation in which the alleged negligence of Coleman combined and concurred with the possible negligence of other parties to cause the accident. The question of proximate cause almost always is for a jury, and this [e]ourt sees no basis here to deviate from that general rule.
“These defendants’ pending summary judgment motion must therefore be denied.”
The petitioners then petitioned this Court for a writ of mandamus.

*756
Standard of Review

“‘Mandamus is an extraordinary writ and will be issued “ ‘only when there is: (1) a clear legal right in the petitioner to the order sought, (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so, (3) the lack of another adequate remedy, and (4) properly invoked jurisdiction of the court.’ ” Ex parte Land, 775 So.2d 847, 850 (Ala.2000) (quoting Ex parte HoHon, 711 So.2d 979, 983 (Ala.1998)). When we consider a mandamus petition, the scope of our review is to determine whether the trial court clearly exceeded its discretion. Ex parte Tegner, 682 So.2d 396 (Ala.1996).’
“State v. Bui, 888 So.2d 1227, 1229 (Ala.2004). We further note this Court’s general rule that we will not review the denial of a motion for a summary judgment on a petition for the -writ of mandamus because an adequate remedy exists by way of an appeal. Ex parte Par Pharm., Inc., 58 So.3d 767, 775-76 (Ala.2010). However, an exception to that general rule is ‘that the denial of a motion for summary judgment grounded on a claim of immunity is reviewable by petition for writ of mandamus.’ Ex parte Rizk, 791 So.2d 911, 912 (Ala.2000) (citing Ex parte Purvis, 689 So.2d 794 (Ala.1996)).”
Ex parte Thomas, 110 So.3d 363, 365-66 (Ala.2012).

Discussion

This Court set forth the law applicable to police officers seeking State-agent immunity in Ex parte City of Montgomery, 99 So.3d 282 (Ala.2012), as follows:
“Section 6-5-338(a) provides:
“ ‘Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.’
“The restatement of State-agent immunity as set out by this Court in Ex parte Cranman, [792 So.2d 392 (Ala.2000) ], governs the determination of whether a peace officer is entitled to immunity under § 6-5-338(a). Ex parte City of Tuskegee, 932 So.2d 895, 904 (Ala.2005). This Court, in Cranman, stated the test for State-agent immunity as follows:
“ ‘A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent’s
“ ‘(1) formulating plans, policies, or designs; or
*757 “ ‘(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
“ ‘(a) making administrative adjudications;
“ ‘(b) allocating resources;
“ ‘(c) negotiating contracts;
“ ‘(d) hiring, firing, transferring, assigning, or supervising personnel; or
“ ‘(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
“ ‘(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers’ arresting or attempting to arrest persons; or
“ ‘(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
“ ‘Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
“ ‘(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
“‘(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.’
“Cranman, 792 So.2d at 405. Because the scope of immunity for law-enforcement officers set forth § 6-5-338(a) was broader than category (4) of the restatement adopted in Cranman, this Court, in Hollis v. City of Brighton, 950 So.2d 300, 309 (Ala.2006), expanded and modified category (4) of the Cranman test to read as follows:
“ ‘ “A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent’s
[[Image here]]
“‘“(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers’ arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala.Code 1975.” ’
“Hollis, 950 So.2d at 309. Additionally:
“ ‘ “This Court has established a ‘burden-shifting’ process when a party raises the defense of State-agent immunity.” Ex parte Estate of Reynolds, 946 So.2d 450, 452 (Ala.2006). A State agent asserting State-agent immunity “bears the burden of demonstrating that the plaintiffs claims arise from a function that would entitle the State agent to immunity.” 946 So.2d at 452. Should the State agent make such a showing, the burden then shifts to the plaintiff to show that one of the two categories of exceptions to State-agent immunity recognized in Cranman is applicable. The exception being argued here is that “the State agent acted willfully, maliciously, fraudulently, in bad faith, or be *758 yond his or her authority.” 946 So.2d at 452. One of the ways in which a plaintiff can show that a State agent acted beyond his or her authority is by proffering evidence that the State agent failed “ ‘to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.’ ” Giambrone v. Douglas, 874 So.2d 1046, 1052 (Ala.2003) (quoting Ex parte Butts, 775 So.2d [173,] 178 [(Ala.2000)]).’
“Ex parte Kennedy, 992 So.2d 1276, 1282-83 (Ala.2008).”
99 So.3d at 292-94.
It is undisputed that Coleman is a peace officer entitled to the immunity established in § 6-5-338(a) and that at the time of the accident he was performing a function— responding to an emergency call — that entitles Coleman to immunity. Therefore, the only question before this Court is whether Whatley carried his burden of showing that one of the two categories of exceptions to State-agent immunity recognized in Cranman is applicable. Whatley agues, and the circuit court held, that Coleman acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority by failing to comply with § 32-5A-7. As set forth above by the circuit court in its order denying the petitioners’ summary-judgment motion, § 32-5A-7
“provides that a police officer, ‘when responding to an emergency call,’ may park in an intersection and halt traffic, but only if his police vehicle ‘is making use of an audible signal meeting the requirements of Section 32-5-213 and visual requirements of any laws of this state requiring visual signals on emergency vehicles.’ ”
The circuit court determined that Coleman acted outside his discretion by failing to comply with § 32-5A-7 because Coleman failed to make continuous use of the siren of the BPD vehicle while he was in the median of Highway 280 attempting to stop the eastbound traffic on Highway 280 so that Higginbotham, who was making continuous use of the emergency lights and siren on the BFRS engine, could drive through the intersection. Essentially, the circuit court determined that Coleman was not “making use of an audible signal,” as that term is defined in § 32-5A-7, because Coleman did not make continuous use of the siren of the BPD vehicle he was driving. We disagree.
As the petitioners argue, “Coleman had his emergency lights on and had his siren make a yelping sound to alert oncoming traffic. Therefore, ... Coleman was ‘making use of an audible signal ... and visual requirements’ pursuant to § 32-5A-7(c) ... and is immune from liability under § 6-5-338(a).” Petition, at p. 18. Nothing in § 32-5A-7 dictates the manner in which a siren must be used; it requires only that a siren be used. The legislature certainly could have inserted the adjective “continuous” in § 32-5A-7 to modify “audible signal” had it so intended. “The judiciary will not add that which the Legislature chose to omit.” Ex parte Jackson, 614 So.2d 405, 407 (Ala.1993). In this case, although Coleman did not make continuous use of the siren, that is not what the statute requires. Coleman exercised the discretion given him under § 32-5A-7 in making use of the siren on the BPD vehicle he was driving when he stopped the eastbound traffic on Highway 280 so that Higginbotham, who was making continuous use of the emergency lights and siren on the BFRS engine, could drive the BFRS engine through the intersection; thus, Coleman is entitled to immunity under § 6-5-338(a) and under the doctrine of State-agent immunity set forth in Cran-man, supra, as modified by Hollis v. City of Brighton, 950 So.2d 300 (Ala.2006).
*759 Our interpretation of § 32-5A-7 in this case is supported when compared with Williams v. Crook, 741 So.2d 1074 (Ala.1999), a prior decision of this Court’s applying § 32-5A-7. In Blackwood v. City of Hanceville, 936 So.2d 495 (Ala.2006), this Court summarized Williams as follows:
“In Williams, supra, a municipal police officer responding to a domestic-disturbance call on a rainy night elected to exceed the speed limit but not to turn on his patrol car’s flashing blue lights and siren. 741 So.2d at 1075. A vehicular collision occurred, and the officer and the municipality by whom he was employed were sued. The trial court entered a summary judgment for the officer and the municipality, under § 6-5-338, based on the officer’s explanation that he had exercised his discretion in deciding not to use his emergency signals ‘because he was concerned that using them might alert anyone at the site of the domestic disturbance to the imminent arrival of the police and that anyone seeking to evade the police might thus have an opportunity to flee.’ 741 So.2d at 1075. This Court reversed the summary judgment, agreeing that § 32-5A-7 gave the officer discretion to drive at a speed in excess of the speed limit but determining that, under the language of that statute, the officer did not have the discretion to exceed the speed limit without using his emergency signals. Section 32-5A-7(c) expressly states that the various exemptions granted an authorized emergency vehicle by that Code section would apply only when the vehicle is using acceptable audible and visual signals. ‘Although [the officer] did have the discretion to decide whether he would drive in excess of the speed limit, once he made that decision he did not have the discretion to further decide whether he would comply with the audible- and visual-signal requirements of § 32-5A-7(c).’ 741 So.2d at 1077.”
936 So.2d at 506 (discussing Williams, supra). The police officer in Williams was not entitled to immunity under § 6-5-338 because he failed to make any use of his emergency signals. In the present case, Coleman, exercising the discretion afforded him, made continuous use of the BPD vehicle’s emergency lights and, although not continuous, he did make use of the siren on the BPD vehicle in stopping the oncoming traffic so that Higginbotham, who was making continuous use of the emergency lights and siren on the BFRS engine, could drive the BFRS engine through the intersection. Our conclusion in this case that “making use of an audible signal” does not necessarily require continuous use is not inconsistent with this Court’s holding in Williams.
Whatley argues that whether the single “yelp” Coleman used to stop the eastbound traffic on Highway 280 so that Higginbotham, who was making continuous use of the emergency lights and siren on the BFRS engine, could drive through the intersection satisfies the statutory requirement of § 32-5A-7 is a question for the jury; thus, he asserts, the circuit court properly denied the petitioners’ summary-judgment motion. However, whether a single “yelp” of a siren constitutes “making use of an audible signal” under § 32-5A-7 is a question of statutory interpretation, which presents only a question of law. See Scott Bridge Co. v. Wright, 883 So.2d 1221, 1223 (Ala.2003) (“This Court reviews de novo a trial court’s interpretation of a statute, because only a question of law is presented.”). Therefore, Whatley’s argument is without merit.
*760 We note that the petitioners also argue that their summary-judgment motion was due to be granted because “Whatley cannot produce substantial evidence showing [that] ... Coleman is the proximate cause of the accident for which Whatley complains.” Petition, at p. 21. However, our holding that Coleman is entitled to State-agent immunity pretermits discussion of this issue.

Conclusion

The petitioners have demonstrated a clear legal right to a summary judgment based on State-agent immunity. Therefore, we grant the petition and issue the writ directing the circuit court to enter a summary judgment for Coleman and for the City as to its liability based on the claims against Coleman.
PETITION GRANTED; WRIT ISSUED.
STUART, BOLIN, MAIN, WISE, and BRYAN, JJ., concur.
MURDOCK, J., concurs in the result.
MOORE, C.J., and SHAW, J., dissent.

. Higginbotham did not join the petitioners' summary-judgment motion.