MURDOCK, Justice.
Keneisha Kendrick appeals from a summary judgment entered by the Jefferson *1201 Circuit Court against her and in favor of the City of Midfield (“the City”) and one of its police officers, Joseph Malachi Wordell, in her action for damages based on personal injuries she sustained as a result of a car accident. We reverse the judgment of the trial court and remand.

I. Facts and Procedural History

On the evening of October 1, 2011, Wor-dell had been dispatched in response to a domestic-disturbance call; he was traveling south on Highway 11 in his City-owned, police-outfitted Ford Crown Victoria automobile. Wordell testified that, upon receiving the dispatch, he turned on his emergency lights and siren and began proceeding toward the scene of the domestic disturbance.
The east and west lanes of Woodward Road are divided by a; median where Woodward Road reaches Highway 11; as a result, there are two intersections with traffic lights at Highway 11 and Woodward Road that are approximately 50 to 100 yards apart. The speed limit on the stretch of Highway 11 intersecting with Woodward Road is 40 miles per hour.
Kendrick was on her way to work and was traveling eastward on Woodward Road toward Highway 11 in a Ford Freestyle sport-utility vehicle owned by her mother, Sharon Parker. Kendrick was planning to turn left onto Highway 11.
Wordell testified that, when he reached the first intersection-, -with Woodward Road, the light was red and he slowed down to a near stop but that the light quickly turned green and he proceeded to reaccelerate through the intersection toward the second traffic light, at which Kendrick was stopped.
Carol Coleman testified that she turned from another road onto Highway 11 immediately after Wordell’s police car passed through the first intersection, following right behind him. She stated that the light for Highway 11 at the first intersection was red when Wordell went through the intersection, which is why she was able to turn and follow him. Coleman testified that Wordell’s police vehicle had its lights flashing but that she did not hear a siren even though her radio was not on and her windows were open slightly. She also stated that Wordell “was flying” through the intersection and that he did not slow down as he passed through it.
Wordell stated that when he arrived at the first intersection he noticed Kendrick’s vehicle stopped approximately 30 feet from the traffic light at the second intersection. Wordell also stated that the light for the second intersection of Woodward Road and Highway 11 turned green as he was accelerating toward it. Wordell testified that he assumed Kendrick stopped because she had seen his emergency vehicle coming along Highway 11. Wordell stated that he accelerated as he approached the second intersection, but that he was only going between 30 to 45 miles per hour when he reached that intersection.
Kendrick testified that she had come to a complete stop at the second intersection and that, when the light for traffic on Woodward Road turned green, she started moving forward to prepare for a left turn onto Highway 11. She stated that a split-second before she hit Wordell’s vehicle, she saw the flashing emergency lights of his vehicle, but she never heard a siren. It is undisputed that Kendrick was traveling at most' 15 miles per hour when her vehicle collided with Wordell’s vehicle.
Coleman testified that she stopped at the second intersection because the light was red for traffic on Highway 11. She stated that Wordell continued “flying” through the second intersection and that he did not slow down. Coleman estimated that Wordell was traveling at least 50 *1202 miles per hour when his vehicle collided with Kendrick’s vehicle. Coleman stated that, in her opinion, the accident could have been avoided “if [Wordell] had slowed down” going through the intersection. She also testified that Wordell told her after the accident that he could not believe Kendrick did not see his vehicle or his lights or hear his siren.
The front of Kendrick’s vehicle collided with the right front passenger side of Wor-dell’s vehicle at' approximately 8:50 p.m. The impact of the crash rendered Kendrick unconscious. Wordell testified that he saw Kendrick’s vehicle at the last second and attempted to swerve left to avoid a collision. The impact of the collision caused Wordell’s vehicle to veer across the median and two lanes of traffic in the opposite direction on Highway 11 and to collide head-on with a vehicle being driven by Ijawuan Powell that was stopped in the lane of opposite-direction traffic closest to the edge of the road. Pictures from the crash show that the front ends of all three vehicles involved in the accident were severely damaged.
Following the accident, Parker’s automobile insurer, Progressive Direct Insurance Company (“Progressive”), contacted Wordell. Following negotiations, Progressive paid Wordell $1,500 for any personal injuries he might have sustained in the accident, and Wordell executed a release of any claims he might have[1] had against Parker or Kendrick stemming from the Octor ber. 1, 2011, accident. Progressive also paid the City’s insurer $8,445.68 for full and complete settlement of its subrogation claim after the City’s insurer had paid the City for the total loss of the Ford Crown Victoria.
On March 22, 2013, Parker and Kendrick filed a complaint in the Jefferson Circuit Court against the City and Wordell based on the October 1, 2011, accident. Kendrick sought compensatory and punitive damages for personal injuries she sustained in the accident, and Parker sought recovery for property damage because.the Ford Freestyle was totaled as a result of the accident.
In their initial discovery requests filed with them complaint, Parker and Kendrick sought production of the “black box” located in Wordell’s vehicle, which would indicate Wordell’s speed at the time of the accident. The City and Wordell refused to produce the “black box,” and Parker and Kendrick filed a motion to compel. On February 21, 2014, in a deposition taken a week before the scheduled hearing on the motion to compel, City Police Chief Frank Belcher testified that the “black box” had been stolen sometime in 2013 when the Ford Crown Victoria was parked in the City’s garage. Belcher also stated that for some unknown reason no theft report was created at the time the theft occurred, and it was unknown exactly when the theft occurred.
In response to Parker and Kendrick’s motion to compel, the City and Wordell filed their own motion to compel in which they asserted that they had asked for the “black box” of the Ford Freestyle in their own discovery requests filed April 29, 2013, but that Parker and Kendrick responded that they did not have access to the data contained on the “black box” of the Freestyle., In response to the discovery request, Parker and Kendrick actually had informed the City and Wordell that the Ford Freestyle had been totaled in the accident and disposed of shortly after the accident, which was the reason.they did not have access to the “black box” data for that vehicle.
On October 1, 2013, the City and Wor-dell filed counterclaims against Parker and Kendrick. The City sought recovery of compensatory damages because the Ford *1203 Crown Victoria was totaled in the accident. Wordell sought damages for personal injuries he sustained in the accident.
On October 28, 2013, Parker arid Kendrick filed a motion to dismiss the City and Wordell’s claims on the ground that their claims had been settled. By order, the trial court converted their motion to dismiss to a motion for a summary judgment.
On January 24, 2014, the City and Wor-dell filed a motion for a summary judgment as to the claims Parker and Kendrick had asserted against them. In the motion, the City and Wordell contended that Wor-dell was entitled to peace-officer immunity under § 6-5-338, Ala.Code 1975, and that, because Wordell was immune from liability, the City likewise could not be held liable for Wordell’s conduct. On February 24, 2014, Parker and Kendrick filed a response in opposition to the City and Wor-dell’s motion for a summary judgment.
On April 3, 2014, the trial court' entered an order in which it disposed of the motions for a summary judgment as to all claims pending in the case. As to Kendrick’s claim against Wordell and the City, the court found, among other things, “that there are no material facts in dispute that would prevent Officer Wordell from being entitled to immunity pursuant to [Ala.Code 1975,] § 6-5-338, and therefore all claims of Plaintiff Keneisha Kendrick against all Defendants are due to be DISMISSED, with prejudice.”[1]
On May 8, 2014, Kendrick filed a notice of appeal of the trial court’s judgment against her. Parker is not a party to this appeal, and the City and Wordell do not dispute that they do not have viable claims against Parker and Kendrick.
II. Standard of Review
“ ‘We review a summary judgment de novo.’ Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala.2002) (citation omitted). ‘Summary judgment is appropriate only when “there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.”. ’ Ex parte Rizk, 791 So.2d 911, 912 (Ala.2000) (citations omitted).
“‘In determining whether the non-movant has created a genuine issue of material fact, we apply the “substan: tial-evidence rule” — evidence, to create a genuine issue of material fact, must. be. “substantial.” § 12-21-12(a), Ala.Code 1975. “Substantial evidence” is defined as “evidence of such weight and quality that fair-minded persons in the exercise' of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).’
“Callens v. Jefferson County Nursing Home, 769 So.2d 273, 278-79 (Ala.2000) (footnote omitted). In deciding a motion for a summary judgment, or in reviewing a summary judgment, the court must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable factual doubts in favor of the nonmoving party. Bruce v. Cole, 854 So.2d 47 (Ala.2003), and Pitney Bowes, Inc. v. Berney Office Solutions, 823 So.2d 659 (Ala.2001). See Ex parte Helms, 873 So.2d 1139 (Ala.2003), and Willis v. Parker, 814 So.2d 857 (Ala.2001).”
Hollis v. City of Brighton, 885 So.2d 135, 140 (Ala.2004).

*1204
III. Analysis

Kendrick contends that the trial court erred in concluding that Wordell is immune from suit under § 6-5-338, Ala.Code 1975. Section 6-5-338(a) provides, in pertinent part: “Every peace officer ... shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.”[2] This Court has determined that “[wjhether a qualified peace officer is due § 6-5-338(a) immunity is now judged by the restatement of State-agent immunity articulated by Ex parte Cranman, 792 So.2d 392 (Ala.2000)....” Hollis, 885 So.2d at 143.[3]
“‘This Court has established a “burden-shifting” process when a party raises the defense of State-agent immunity.’ Ex parte Estate of Reynolds, 946 So.2d 450, 452 (Ala.2006). A State agent asserting State-agent immunity ‘bears the burden of demonstrating that the plaintiffs claims arise from a function that would entitle the State agent to immunity.’ 946 So.2d at 452. Should the State agent make such a showing, the burden then shifts to the plaintiff to show that one of the two categories of exceptions to State-agent immunity recognized in Cranman is applicable.”
Ex parte Kennedy, 992 So.2d 1276, 1282 (Ala.2008).
Kendrick does not dispute that her claim arises from a function that would entitle Wordell to immunity. The exception to State-agent immunity Kendrick argues is applicable in this case is that “the State agent act[ed] willfully, maliciously, fraudulently, in bad faith, [or] beyond his or her authority.” Cranman, 792 So.2d at 405. Specifically, Kendrick contends that Wor-dell acted beyond his authority based on the conditions provided in § 32-5A-7, Ala. Code 1975, for operating an emergency vehicle.
Section 32-5A-7 provides:
“(a) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.
“(b) The driver of an authorized emergency vehicle may:
“(1) Park or stand, irrespective of the provisions of this chapter;
“(2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;
*1205 “(3) Exceed the maximum speed limits so long as he does not endanger life or property;
“(4) Disregard regulations governing direction of movement or turning in specified directions.
“(c) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of an audible signal meeting the requirements of Section 32-5-213 and visual requirements of any laws of this state requiring visual signals on emergency vehicles.
“(d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.”
(Emphasis added.)
In Blackwood v. City of Hanceville, 936 So.2d 495 (Ala.2006), this Court held that when a peace officer is seeking immunity from liability for “the driving of an authorized emergency vehicle in response to an emergency call,” “the immunity afforded the peace officer ... is subject to, and limited by, the conditions imposed by § 32-5A-7.” 936 So.2d at 505-06. In other words, “[i]n the particular settings described by § 32-5A-7(a), the legislature has acted to restrain the manner in which the driver of the emergency vehicle may exercise his or her discretion and judgment.” [4] 936 So.2d at 506.
Kendrick contends that genuine issues of fact exist as to whether Wordell violated the conditions of § 32-5A-7. Specifically, she states that there are disputed issues of fact concerning: (1) whether Wordell used his siren at all because neither Coleman nor Kendrick heard his siren; (2) whether Wordell slowed down when traveling through the second intersection because Coleman testified that Wordell was “flying” through the intersection and that he did not slow down; and (3) whether Wordell exceeded the speed limit in a manner that endangered life or property because Coleman testified that if Wordell had slowed down going through the second intersection the accident would not have happened. Kendrick contends that those disputed facts precluded a summary judgment in favor of Wordell and, by extension, the City.[5]
The City and Wordell do not dispute that Wordell had to comply with the conditions of § 32-5A-7 in operating his emergency vehicle to qualify for peace-officer immunity. They do not ask this Court to reevaluate its jurisprudence concerning the “beyond-authority” exception to State-agent immunity. Rather, their response focuses on the issue whether Wordell activated his siren when answering the domestic-disturbance call. In that regard, they assert that “officer Wordell’s unwavering testimony that he had activated his emergency sirens cannot be refuted by claims that others did not hear them.” For support of this assertion, the City and Wordell cite Ex parte Coleman, 145 So.3d 751 (Ala. 2013).
In Coleman, this Court determined that § 32-5A-7(c) does not require the operator of an emergency.vehicle to use a siren continuously to meet the condition of that *1206 subsection that the “vehicle is making use of an audible signal.” The Court explained:
“As the petitioners argue, ‘Coleman had his emergency lights on and had his siren make a yelping sound to alert oncoming traffic. Therefore, ... Coleman was “making use of an audible signal ,.. and visual requirements” pursuant 'to § 32-5A-7(c) ... and is immune from liability under § 6-5-338(a).’ ... Nothing in § 32-5A-7 dictates the manner in which a siren must be used; it requires only that a siren be used. The legislature certainly could have inserted the adjective ‘continuous’ in § 32-5A-7 to modify ‘audible signal’ had it so intended. ‘The 'judiciary will not add that which the Legislature chose to omit.’ Ex parte Jackson, 614 So.2d 405, 407 (Ala.1993). In this case, although Coleman did not make continuous use of the siren, that is not what the statute requires.”
145 So.3d at 758.
The obvious difference between Coleman and the present case is that in Coleman it was undisputed that the police officer made some use of his siren, whereas in this case both Kendrick and Coleman testified that Wordell activated only his lights and not his siren. The City and Wordell argue that
“[wjhile Ms. Kendrick has contended that Officer Wordell did not have any use of his emergency sirens, in an attempt to distinguish this case from Ex parte Coleman, the simple allegation that his sirens were not heard does not rise to the level necessary to prove that Officer Wordell is not entitled to immunity. This is especially true considering Officer Wordell’s consistent and continuous statements that his sirens were fully engaged at the time the collision occurred.” [6]
But this argument asks the Court to give more weight to Wordell’s testimony than to the testimony of both Kendrick and Coleman. Both Kendrick and Coleman also have been “consistent” in stating that they never heard a siren. Given the facts of the case, the clear implication of their testimony is that Wordell never engaged his siren. This constitutes a factual dispute not proper for disposition by a summary judgment. .
As Kendrick notes, there is also a dispute concerning whether Wordell slowed down when he proceeded through *1207 the second intersection. Wordell testified that the traffic light at the second intersection was green when he went through the second intersection and thus that there was no reason for him to slow down. He also stated that he was traveling 30 to .40 miles per hour at the time or at the most 45 miles per hour and so he was .not traveling at an unsafe speed through the second intersection. In contrast, both Kendrick and Coleman testified that Wor-dell went through a red traffic light at the second intersection, and Coleman testified that Wordell “was flying” through the intersection. Indeed, Coleman estimated that Wordell was going at least 50 miles per hour when he went through the second intersection.[7] It can also be inferred from the fact that Wordell’s vehicle traveled across the median and two lanes of oncoming traffic following its collision with Kendrick’s vehicle and from the severe damage sustained'by all the vehicles involved in the accident that Wordell was traveling at a high rate- of speed; it is undisputed that Kendrick was going only 10 to 15 miles per hour at the time of the collision. Because the evidence is in conflict as to whether Wordell went through a red traffic light at the second intersection, there is also a genuine issue of fact as to whether Wordell slowed down to an appropriate speed when he proceeded through the second intersection.

IV. Conclusion

Based on the foregoing, we conclude that the trial court erred in entering a summary judgment in favor of Wordell on the basis of § 6-5-338. Because the City’s liability is linked to Wordell’s, the trial court likewise erred in entering a summary judgment in favor of the City. The judgment of the trial court is reversed and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
MOORE, C.J., and BOLIN, MAIN, and BRYAN, JJ., concur.

. The trial court disposed of Parker’s, the City's, and Wordell’s respective claims and counterclaims on various grounds not relevant here.

. It is undisputed that Wordell qualifies as a "peace officer” under § 6-5-338, Ala.Code 1975.

. In the context of police officers acting in the line and scope of their duties, Cranman originally extended immunity when the conduct made the basis of the claim against the officer was based on the officer’s "exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to law-enforcement officers’ arresting or attempting to arrest persons.” 792 So.2d at 405. Because § 6-5-338 does not limit the availability of immunity to the "enforcement of the criminal laws,” the Court in Hollis v. City of Brighton, 950 So.2d 300 (Ala.2006), modified the above-quoted category of Cranman immunity to provide that immunity would be extended when a State agent is " 'exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers’ arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala.Code 1975.’ ” Hollis, 950 So.2d at 309.

. This Court has reaffirmed the limitation in § 32-SA-7 on § 6-5-338 immunity in Ex parte Coleman, 145 So.3d 751 (Ala.2013), and Ex parte City of Midfield, 161 So.3d 1158 (Ala.2014).

. It is undisputed that the City’s immunity is linked to Wordell’s immunity. See § 6-5-338(b), Ala.Code 1975, and Howard v. City of Atmore, 887 So.2d 201, 211 (Ala.2003).

. The City and Wordell also contend that Wordell’s testimony was "corroborated by others,” but the only other testimony they cite is from Ijawuan Powell. In a recorded statement dated October 3, 2011, taken by an insurance adjustor, Powell stated that Wordell had both his lights and siren activated when he was traveling through the second intersection. Powell also stated that he was stopped at the intersection because his traffic light was red, but that the light turned green before Wordell crossed into the intersection. In an affidavit Powell executed on January 24, 2013, and gave to Kendrick, which she attached to her reply brief, Powell stated that Wordell went through a red traffic light at the second intersection, that he was traveling at a high rate of speed, and that he had his lights on but not his siren.
Powell’s statement to the insurance adjustor is not in the form of deposition testimony, and, therefore, it is not admissible as independent evidence. See Rule 56(e), Ala. R, Civ. P. Although it- might be available to impeach Powell’s affidavit to Kendrick, Powell’s subsequent affidavit cannot be considered because it is not contained in the record, See Roberts v. NASCO Equip. Co., 986 So.2d 379, 385 (Ala.2007) (observing that " ‘ "attachments to briefs are not considered part of the record and therefore cannot be considered on appeal” ’ ” (quoting Morrow v. State, 928 So.2d 315, 320 n. 5 (Ala.Crim.App.2004), quoting in turn Huff v. State, 596 So.2d 16, 19 (Ala.Crim.App.1991))), Thus, none of Powell’s statements can be used to corroborate the testimony of any party.

. The City and Wordell argue on appeal that Coleman's testimony about the speed at which Wordell was traveling should be stricken because it constitutes an expert opinion by a laypérson in thát she based her estimate of his speed on the impact of the vehicles involved in the collision. The City and Wordell never filed a motion to strike Coleman’s testimony in this regard, however, nor did they present this argument in any way in the trial court. Therefore, they waived their objection to Coleman’s testimony on this basis.