Rel: March 3, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

---

**SC-2022-0525**

---

**Ex parte Lester Lee Thomas**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Jennifer Dell Peach**

**v.**

**Lester Lee Thomas et al.)**

**(Mobile Circuit Court: CV-18-901977)**

PER CURIAM.

Jennifer Dell Peach sued, among others, Lester Lee Thomas in the Mobile Circuit Court ("the trial court"), asserting claims arising from a multivehicle accident that took place after Thomas, a State trooper with the Alabama Law Enforcement Agency, allegedly blocked both lanes of a highway to perform traffic stops of speeding drivers. Thomas moved for a summary judgment, arguing, among other things, that he was entitled to State-agent immunity. The trial court denied that motion. Thomas petitions this Court for a writ of mandamus directing the trial court to enter a summary judgment in his favor on the ground of State-agent immunity. For the following reasons, we deny the petition.

Facts and Procedural History

At approximately 10:00 a.m. on August 13, 2016, Thomas initiated a traffic stop of a speeding driver ("the first speeder") traveling north on Interstate 65 ("I-65") near mile marker 22. Thomas initiated the stop along a stretch of I-65 that has two northbound travel lanes ("the left inside lane" and "the right outside lane") with a speed limit of 70 miles per hour.

Thomas was parked in his police vehicle on the right shoulder of I-65 when his radar recorded the first speeder drive past him at 83 miles per hour in the left inside lane. Thomas activated his vehicle's emergency lights, merged into the left inside lane, and began to pursue the first speeder. As Thomas accelerated his vehicle in pursuit of the first speeder, he noticed, in his rearview mirror, another speeding driver ("the second speeder") traveling behind him in the left inside lane. The first speeder pulled his vehicle off the highway, coming to a stop on the right shoulder of I-65 near mile marker 33. Shortly thereafter, Thomas stopped his police vehicle, in the right outside lane next to the first speeder's vehicle, obstructing access to one of only two travel lanes, and disembarked from his vehicle.

After exiting his police vehicle, Thomas walked into the left inside lane and, facing the second speeder's oncoming vehicle, gestured for the second speeder to stop and pull over.[1] The second speeder applied his

[1]Whether Thomas stepped into the left inside lane is disputed. At his deposition, Thomas denied stepping into or doing anything to obstruct the left inside lane. Other witness testimony, however, indicated that Thomas stepped into the left inside lane, trying to physically wave down cars to get them to stop or slow down, and that had the second speeder not stopped he would have struck Thomas. For the purposes of our analysis, we must assume that Thomas stepped into the left inside lane.

vehicle's brakes and came to a sudden halt in the left inside lane. Upon seeing the blockade of both travel lanes ahead, the five motorists traveling behind the second speeder applied their vehicles' brakes to avoid colliding with the vehicles in front of them. The driver in the first vehicle behind the second speeder diverted his vehicle to the left and into the grass median, while the driver in the second vehicle behind the second speeder came to a halt. Peach was a passenger in the third vehicle behind the second speeder when her daughter, the driver of that vehicle, hit her vehicle's brakes in response to the sudden stop in traffic flow but lost traction and control of her vehicle, which then slid and crashed into the vehicles ahead. Peach suffered serious injuries in the crash.

In August 2018, Peach sued Thomas in the trial court, alleging that Thomas had negligently or wantonly caused the chain-reaction collision that led to her injuries. Thomas filed a motion for a summary judgment, asserting, among other things, that he was entitled to State-agent

---

See Ex parte Wood, 852 So. 2d 705, 708 (Ala. 2002) (citing Ex parte Rizk, 791 So. 2d 911, 912 (Ala. 2000)) ("[C]ourts, both trial and appellate, must view the record in the light most favorable to the nonmoving party, accord the nonmoving party all reasonable favorable inferences from the evidence, and resolve all reasonable doubts against the moving party ....").

immunity pursuant to § 6-5-338(a), Ala. Code 1975, and Ex parte Cranman, 792 So.2d 392 (Ala. 2000) (plurality opinion),[2] as modified by Hollis v. City of Brighton, 950 So. 2d 300, 309 (Ala. 2006). The trial court denied the summary-judgment motion. Thomas now petitions this Court for a writ of mandamus directing the trial court to enter a summary judgment in his favor on the basis of State-agent immunity.[3]

Standard of Review

The denial of a motion for a summary judgment grounded on a claim of immunity is reviewable by petition for writ of mandamus. Ex parte Purvis, 689 So. 2d 794 (Ala. 1996). Mandamus is a drastic and extraordinary remedy, and it will be issued only when there is "(1) a clear

[2]Cranman, a plurality decision, was adopted by a majority of this Court in Ex parte Butts, 775 So. 2d 173 (Ala. 2000), and was later codified at § 36-1-12, Ala. Code 1975.

[3]In his petition, Thomas alternatively claims that he is entitled to a writ of mandamus directing the trial court to enter a summary judgment in his favor based on other, nonimmunity grounds. However, although this Court "will consider a challenge to a denial of a summary-judgment motion that is 'grounded on a claim of immunity,' " we "will not consider secondary arguments that a summary judgment was appropriate on other grounds." Ex parte Smith, 327 So. 3d 184, 187 (Ala. 2020). For this reason, we address only matters relevant to the issue of Thomas's entitlement to a summary judgment based on State-agent immunity.

legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Horton, 711 So. 2d 979, 983 (Ala. 1998) (citing Ex parte United Serv. Stations, Inc., 628 So. 2d 501 (Ala. 1993)). "In determining, on mandamus review, whether the trial court exceeded the limits of its discretion, 'the appellate courts will not reverse the trial court on an issue or contention not presented to the trial court for its consideration in making its ruling.'" Ex parte Ebbers, 871 So. 2d 776, 786 (Ala. 2003) (quoting Ex parte Wiginton, 743 So. 2d 1071, 1073 (Ala. 1999)).

When reviewing the denial of a summary-judgment motion asserting State-agent immunity, this Court asks whether there is a genuine issue of material fact as to whether the movant is entitled to immunity. Ex parte Wood, 852 So. 2d 705, 708 (Ala. 2002). In making that determination, we "view the record in the light most favorable to the nonmoving party, accord the nonmoving party all reasonable favorable inferences from the evidence, and resolve all reasonable doubts against the moving party." Id. (citing Ex parte Rizk, 791 So. 2d 911, 912 (Ala.

2000)). If a genuine issue of material fact exists with respect to whether the movant is entitled to State-agent immunity, summary judgment is not appropriate. Id.

Discussion

Thomas contends that Peach's claims against him are barred by the doctrine of State-agent immunity. In Ex parte Cranman, this Court restated the doctrine of State-agent immunity. The Cranman restatement, as modified by Hollis v. City of Brighton, provides, in pertinent part:

> "'A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
>
> "'....
>
> "'(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala. Code 1975.'"

950 So. 2d at 309 (second emphasis omitted). Thomas also asserts "peace-officer immunity" pursuant to § 6-5-338(a). In Hollis, this Court modified category (4) of the Cranman restatement to incorporate the immunity for peace officers set forth in § 6-5-338(a). Accordingly, this Court now

recognizes that the restatement of State-agent immunity as set out by this Court in Cranman, and as modified by Hollis, "governs the determination of whether a peace officer is entitled to immunity under § 6-5-338(a)." Ex parte City of Montgomery, 99 So. 3d 282, 292 (Ala. 2012); see also Howard v. City of Atmore, 887 So. 2d 201, 204 (Ala. 2003) and Ex parte Kennedy, 992 So. 2d 1276, 1281-82 (Ala. 2008).

There are two exceptions to the immunity recognized in Cranman:

> "Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
>
> "(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>
> "(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."

792 So. 2d at 405.

Furthermore, this Court has established a "burden-shifting" process when a party raises the defense of State-agent immunity. Ex parte Estate of Reynolds, 946 So. 2d 450, 452 (Ala. 2006). A party who asserts the defense of State-agent immunity bears the burden of

demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity. Id. If the State agent satisfies that initial burden, the burden then shifts to the plaintiff, who must demonstrate that one of the two exceptions to State-agent immunity applies. Id. "One of the ways in which a plaintiff can show that a State agent acted beyond his or her authority is by proffering evidence that the State agent failed '"to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist."'" Kennedy, 992 So. 2d at 1282-83 (quoting Giambrone v. Douglas, 874 So. 2d 1046, 1052 (Ala. 2003), quoting in turn Ex parte Butts, 775 So. 2d 173, 178 (Ala. 2000)). A State agent also acts beyond his or her authority by violating a rule or statute that imposes a mandatory duty upon the State agent and is "'so specific that it removes the [S]tate agent's discretion and puts him on notice that certain, specific acts are unacceptable.'" Odom v. Helms, 314 So. 3d 220, 229 (Ala. 2020) (quoting King v. Archer (No. 2:17-CV-174-KOB, Sept. 6, 2018) (N.D. Ala. 2018) (not reported in F. Supp. 3d)); see also, e.g., Norris v. City of Montgomery, 821 So. 2d 149, 155 (Ala. 2001) (holding that police officer was not entitled to discretionary-function

immunity under § 6-5-338(a) because evidence demonstrated that officer had violated statute imposing a mandatory duty).

We conclude that Thomas met his initial burden of demonstrating that he was engaged in law-enforcement activities for which State-agent immunity would be available. It is undisputed that Thomas was acting generally within the line and scope of his law-enforcement duties and was attempting to enforce the traffic laws of the State when he initiated the double traffic stop giving rise to this action. See, e.g., Kennedy, 992 So. 2d at 1283 (holding that police officers met initial burden under Cranman upon showing that, while serving warrant, they were attempting to generally enforce the criminal laws of the State and were performing a function within the line and scope of their law-enforcement duties). The question then becomes whether Thomas's conduct fell within an exception to State-agent immunity.

Peach contends that Thomas acted beyond his authority in performing the traffic stops at issue, because, she argues, his conduct violated various provisions of the Alabama Rules of the Road Act, § 32-5A-1 et seq., Ala. Code 1975. Specifically, Peach contends that Thomas violated §§ 32-5A-212(a), 32-5A-215(b), and 32-5A-215(d), Ala. Code 1975

(collectively referred to as "the pedestrian statutes"), when he allegedly walked into the left inside lane of I-65 to stop the second speeder. The relevant portion of § 32-5A-212(a) provides that "[e]very pedestrian crossing a roadway … shall yield the right-of-way to all vehicles upon the roadway." (Emphasis added.) Section 32-5A-215(b) provides, in relevant part, that "any pedestrian walking along and upon a highway shall walk only on a shoulder …." (Emphasis added.) Finally, § 32-5A-215(d) mandates that "any pedestrian upon a roadway shall yield the right-of-way to all vehicles upon the roadway." (Emphasis added.) We agree that a "pedestrian" who suddenly steps into a lane of fast-moving interstate traffic, as Thomas is alleged to have done, has at least violated § 32-5A-215. Furthermore, § 32-5A-215(d) imposes a mandatory duty on all pedestrians -- i.e., "[a]ny individual afoot," § 32-1-1.1(43), Ala. Code 1975 -- to yield to vehicles on the roadway.[4] Thus, if that section applies to Thomas, its violation would indicate that Thomas acted beyond his authority by failing to yield to oncoming traffic. See Norris v. Montgomery, 821 So. 2d at 155 (holding that discretionary-function

[4]As noted in several of the special writings, at the time of the collision made the basis of Peach's claims, former § 32-1-1.1(41), Ala. Code 1975, defined "pedestrian" as "any person afoot." (Emphasis added.)

immunity under §6-5-338(a) "evaporates upon the violation of a statute imposing a mandatory duty"). The question, however, is whether the pedestrian statutes applied to Thomas at the time he attempted the double traffic stop. Thomas contends they did not.

In the trial court, Thomas made two arguments as to why the pedestrian statutes did not apply to him. First, he argued that § 32-5A-7, Ala. Code 1975, excused his noncompliance with the pedestrian statutes. That section exempts drivers of authorized emergency vehicles who are responding to an emergency or pursuing a suspected law violator from complying with certain traffic laws -- such as those concerning speeding, illegal parking, and obeying traffic signals. Section 32-5A-7 provides:

> "(a) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.
>
> "(b) The driver of an authorized emergency vehicle may:
>
> > "(1) Park or stand, irrespective of the provisions of [the Alabama Rules of the Road Act];

"(2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

"(3) Exceed the maximum speed limits so long as he does not endanger life or property;

"(4) Disregard regulations governing direction of movement or turning in specified directions.

"(c) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of an audible signal meeting the requirements of Section 32-5-213[, Ala. Code 1975,] and visual requirements of any laws of this state requiring visual signals on emergency vehicles.

"(d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others."

Section 32-5A-7, however, provides no exemption, express or implied, to the pedestrian statutes. Moreover, even if such an exemption could be read into that statute, there is a question of fact in this case regarding whether Thomas was "making use of an audible signal," which also precludes entering a summary judgment in his favor. See Kendrick v. City of Midfield, 203 So. 3d 1200, 1206 (Ala. 2016) (holding that existence of a genuine issue of material fact as to whether officer used siren

precluded entering a summary judgment in favor of officer on peace-officer-immunity grounds).

Thomas also argued that § 32-5A-4, Ala. Code 1975, generally exempted him from having to comply with the pedestrian statutes. That statute provides that "[n]o person shall willfully fail or refuse to comply with any lawful order or direction of any police officer or fireman invested by law with authority to direct, control or regulate traffic." That statute, however, regulates the conduct of members of the public who interact with peace officers; it does not appear to give officers extra authority to act contrary to otherwise applicable traffic laws, and Thomas made no specific arguments explaining why that statute exempted him from having to comply with the pedestrian statutes.

At oral argument, Thomas proffered several new arguments as to why his conduct was not controlled by the pedestrian statutes. For example, Thomas contended that he was not a "pedestrian" within the meaning of the pedestrian statutes. As noted earlier, § 32-1-1.1(43) defines a pedestrian as "[a]ny individual afoot." Thomas noted, however, that § 32-1-1.1 also provides that the definitions in that statute will not apply "when the context otherwise requires" and contended that, in the

context of this case, he was not a "pedestrian" under the pedestrian statutes. Because this argument was not made below, we may not now consider it. See, e.g., Ex parte Volvo Trucks N. Am., Inc., 954 So. 2d 583, 587 (Ala. 2006) (quoting State v. Reynolds, 887 So. 2d 848, 851-52 (Ala. 2004)) ("It is well settled that we 'will not ... issue a writ of mandamus commanding a trial judge to rescind an order, based upon a ground asserted in the petition for the writ of mandamus that was not asserted to the trial judge, regardless of the merits of a petitioner's position in the underlying controversy.'").

Thomas also invoked the predicate-act canon of statutory construction by asserting for the first time at oral argument that certain statutes granting general law-enforcement powers to State troopers -- see, e.g., Ala. Code 1975, §§ 32-2-22 and 32-5-310 -- implicitly authorized his conduct, notwithstanding the prohibitions of the pedestrian statues. Under the predicate-act canon, whenever a power is given by a statute, everything reasonably necessary to effectuate that power is also granted. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 192 (Thomson/West 2012). Again, because this argument

was not raised before the trial court, we may not consider it. Volvo Trucks, 954 So. 2d at 587.

Conclusion

In short, based solely on the arguments and evidence presented to the trial court, Thomas has not established a clear legal right to an order granting his motion for a summary judgment based on State-agent immunity. Therefore, Thomas's petition for the writ of mandamus must be denied. In denying the petition, we do not address arguments that were not specifically presented to the trial court.

PETITION DENIED.

Parker, C.J., and Wise, Stewart, and Mitchell, JJ., concur.

Shaw and Cook, JJ., concur in the result, with opinions.

Bryan, J., concurs in the result.

Sellers, J., dissents, with opinion, which Mendheim, J., joins.

SHAW, Justice (concurring in the result).

I am not convinced that the petitioner, State Trooper Lester Lee Thomas, is not immune from suit. Specifically, I do not believe that a driver subject to a lawful stop by a law-enforcement officer on foot has the right-of-way over that officer. My rationale for that conclusion, however, is not raised in the petition; thus, the petition cannot be granted on that ground. I therefore reluctantly concur in the result.

This Court's formulation of State-agent immunity provides, among other things, that law-enforcement officers like Thomas are entitled to immunity from tort claims when those claims are based upon those law-enforcement officers' "'exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, ... arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala. Code 1975.'" Hollis v. City of Brighton, 950 So. 2d 300, 309 (Ala. 2006) (quoting and modifying restatement of State-agent immunity set forth in Ex parte Cranman, 792 So. 2d 392, 405 (Ala. 2000) (plurality opinion; see note 2, supra)) (emphasis omitted). Clearly, Thomas, in

attempting to effectuate a stop of one who was speeding, was exercising judgment in the enforcement of the laws.

A State agent is not immune "when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." Cranman, 792 So. 2d at 405 (emphasis added). The allegation that Thomas was acting negligently or wantonly does not demonstrate that he acted beyond his authority: "[N]egligent or wanton conduct will not support the conclusion that a police officer has acted beyond his or her authority when he or she is exercising discretion in the discharge of his or her law-enforcement duties." Ex parte City of Montgomery, 272 So. 3d 155, 168 (Ala. 2018).

However, it is argued in this case that a violation of the law shows an act "beyond [one's] authority." Specifically, the plaintiff below, Jennifer Dell Peach, argues that Thomas violated Alabama's Rules of the Road, see § 32-5A-1 et seq., Ala. Code 1975 -- namely, certain Code sections regulating the conduct of pedestrians. Section 32-5A-212(a), Ala. Code 1975, provides: "Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles

upon the roadway." (Emphasis added.) This Code section appears inapplicable; the facts do not suggest that Thomas was attempting to "cross" the road. Section § 32-5A-215(b), Ala. Code 1975, provides: "Where a sidewalk is not available, any pedestrian walking along and upon a highway shall walk only on a shoulder, as far as practicable from the edge of the roadway." (Emphasis added.) This Code section appears inapplicable; the facts do not suggest that Thomas was "walking along and upon a highway" in such a manner that he should have used a sidewalk or walked on the shoulder. Instead, he was, according to Peach, standing in the lane attempting to stop traffic.

Peach further contends that Thomas violated § 32-5A-215(d), which provides: "Except as otherwise provided in [the Alabama Rules of the Road Act], any pedestrian upon a roadway shall yield the right-of-way to all vehicles upon the roadway." This Code section is more troublesome. The ultimate issue, in my view, hinges on whether Thomas was a pedestrian and whether he was required to "yield the right-of-way" to a driver he was stopping because of a criminal violation.

Former § 32-1-1.1(41), Ala. Code 1975, the applicable Code section that existed in 2016 (the Code section has since been amended; see note 4 and accompanying text, supra), stated:

> "The following words and phrases when used in this title shall, for the purpose of this title, have meanings respectively ascribed to them in this section, <u>except when the context otherwise requires</u>:
>
> "....
>
> "(41) Pedestrian. Any person afoot."

(Emphasis added.) See also <u>Pruitt v. Oliver</u>, 331 So. 3d 99, 111 (Ala. 2021) ("The definition of 'pedestrian' in the applicable Alabama Code section is '[a]ny person afoot.' ").

Thomas was "afoot"; he was standing upon the road as opposed to occupying a vehicle. I am not convinced, however, that the "context" of this case requires the legal conclusion that he was a pedestrian.[5]

Under § 15-5-30, Ala. Code 1975, "any highway patrolman or state trooper may stop any person abroad in a public place whom he reasonably suspects is committing, has committed or is about to commit a ... public

[5]Thomas stated in his deposition, when questioned, that he was a pedestrian, but it does not appear that he was conceding the legal point in relation to § 32-1-1.1.

offense." This includes stopping a traveling vehicle. Manning v. State, 612 So. 2d 1262, 1264 (Ala. Crim. App. 1992); see also White v. State, 479 So. 2d 1368, 1375 (Ala. Crim. App. 1985) (holding that "a public roadway is a public place within the meaning of § 15-5-30"). Section 32-5A-4, Ala. Code 1975, provides that drivers must obey orders from law-enforcement officers directing or controlling traffic. Drivers may even violate certain Rules of the Road at the direction of law-enforcement officers. § 32-5A-137, Ala. Code 1975. Thomas had the lawful authority to stop the second speeding vehicle; the driver of the vehicle had a duty to comply. In allegedly stepping into the road to effectuate that stop, Thomas was exercising judgment in the enforcement of the criminal laws regarding speeding.

However, Thomas was not one simply "afoot" while traveling on, near, or across a road. He was not using the road on foot as opposed to using the road while driving a vehicle. He was not merely present upon the road. The context of the pedestrian statutes involves the regulation of vehicles and those on foot in the normal course of traffic interaction. I find it difficult to conclude that the context of the pedestrian statutes includes regulating the manner in which law-enforcement officers, on

foot, enforce traffic laws or otherwise stop persons committing public offenses, the authority for which is specifically provided by law. The legislature, in specifying that the meaning of the term "pedestrian" may change depending on the context, clearly indicated that its definition of the term is not always applicable; the definition provided by § 32-1-1.1 does not always control.

Further, § 32-5A-215(d) provides that pedestrians "shall yield the right-of-way to all vehicles upon the roadway." "Right-of-way" was defined in former § 32-1-1.1(54), the applicable Code section that existed in 2016, as follows:

> "The right of one vehicle or pedestrian to proceed in a lawful manner in preference to another vehicle or pedestrian approaching under such circumstances of direction, speed, and proximity as to give rise to danger of collision unless one grants precedence to the other."[6]

The context of this section is governing the safe movement of vehicles verses pedestrians. Again, Thomas was performing a lawful stop of a speeder, which he had the power to do; he "may stop any person abroad in a public [road] whom he reasonably suspects is committing ...

[6]Section 32-1-1.1 was amended in 2021. Although the definition of "right-of-way" has not changed, that definition is now located in § 32-1-1.1(56).

[a] public offense," § 15-15-30, and the Rules of the Road require drivers to obey his directions. § 32-5A-4. When an officer, on foot, attempts to exercise a lawful stop of a vehicle, can it be said that the offending driver nevertheless has the "right-of-way" to proceed in preference to the officer? Does this section deem that drivers who are, as in this case, speeding or who are, possibly in other situations, driving while intoxicated or fleeing arrest have the right-of-way to proceed in the face of an officer on foot attempting to perform a lawful stop? Do the Rules of the Road give "preference" to violators of those rules over those who are enforcing them against those violators?

The idea that an officer on foot attempting to control traffic or to effectuate the stop of a criminal suspect driving a vehicle must yield the right-of-way to that suspect is troubling. In contrast, drivers must yield the right-of-way to pedestrian highway road workers and garbage collectors. § 32-5A-116(a) and § 32-5A-58.3(a), Ala. Code 1975. But apparently there is no specific Code section affording law-enforcement officers who happen to be on foot in the road the right-of-way when stopping criminal suspects. Either this is a serious gap in the law or the legislature thought, given the "context," no such special provisions were

required. I believe it is the latter: the context of Thomas's actions shows that the meaning of the terms "pedestrian" and "right-of-way" as defined in § 32-1-1.1 do not apply in this case. Thomas was not violating the Rules of the Road.

The above analysis is not advanced in the petition, and so it cannot form a basis to issue the writ. Ex parte Wilcox Cnty. Bd. of Educ., [Ms. 1200775, June 10, 2022] ___ So. 3d ___, ___ n.9 (Ala. 2022) (refusing to consider an issue not raised in a petition for a writ of mandamus). Although Thomas's motion for a summary judgment and various follow-up filings questioned whether he should be considered a pedestrian, the issue whether he fit the statutory definition of "pedestrian" was not submitted to the trial court. State v. Reynolds, 887 So. 2d 848, 851-52 (Ala. 2004) (holding that this Court will not issue a writ of mandamus based upon a ground that was not asserted to the trial court). I therefore concur in the result. This issue must await further litigation in the trial court or on appeal.

COOK, Justice (concurring in the result).

Like Justice Shaw, I reluctantly concur in the result. As explained in the main opinion, the key issue in this case is whether there is sufficient evidence for a jury to conclude that State Trooper Lester Lee Thomas violated Alabama law when he allegedly blocked both northbound lanes of Interstate 65 to perform traffic stops of two speeding drivers. Trooper Thomas contends that he was entitled to State-agent immunity for his discretionary actions as a peace officer. Plaintiff Jennifer Dell Peach argues, however, that Trooper Thomas was not entitled to State-agent immunity because he became a "pedestrian" when he exited his vehicle and was, therefore, subject to Alabama's Rules of the Road, see § 32-5A-1 et seq., Ala. Code 1975. Specifically, she argued that Trooper Thomas "could not have been 'exercising judgment in the enforcement of the criminal laws of the State' because he violated three statutes found in the Rules of the Road that 'remove[d] the discretion on which the immunity is based'" -- §§ 32-5A-212(a), 32-5A-215(b), and 32-5A-215(d), Ala. Code 1975 ("the pedestrian statutes").

In 2016, the applicable definition of "pedestrian" was "[a]ny person afoot." Former § 32-1-1.1(41), Ala. Code 1975 (see note 4 and

accompanying text, supra). First, Peach argues that §§ 32-5A-212(a) and 32-5A-215(d)[7] required Trooper Thomas, as a pedestrian, to "yield" to the right-of-way to the oncoming traffic, including the speeding vehicle at issue, on Interstate 65 rather than stepping into the middle of the left lane to stop the alleged second speeder.[8]

As I see it, the problem with applying these two "shall yield" statutes to Trooper Thomas is that doing so ignores a more specific statute applicable to law-enforcement officers in Alabama -- § 32-5A-4, Ala. Code 1975. That statute provides that "[n]o person shall willfully fail or refuse to comply with any lawful order or direction of any police officer ... invested by law with authority to direct, control or regulate traffic" (emphasis added), meaning that everyone must yield to the law-enforcement officer. The speeder must yield to the State trooper -- not

---

[7]Section 32-5A-212(a) requires that pedestrians "shall yield the right-of-way to all vehicles upon the roadway." (Emphasis added.) Likewise, § 32-5A-215(d) requires that "any pedestrian upon a roadway shall yield the right-of-way to all vehicles upon the roadway." (Emphasis added.)

[8]I note briefly that the evidence is disputed as to whether, and how far, Trooper Thomas stepped into the left-hand lane. For the purposes of summary judgment, however, we must view the evidence in the light most favorable to the nonmovant.

the other way around. The main opinion dismisses the applicability of this statute because it is directed to the public and not peace officers. This is a mistake in logic. If the public must "comply" with a police officer's "lawful order," then, in the case of a traffic stop, the officer is not the one who must "yield" the right-of-way; it is the speeder who must yield the right-of-way. The specific statute governing the public's adherence to lawful orders from police officers necessarily must govern over the general pedestrian statutes. See Ex parte Jones Mfg. Co., 589 So. 2d 208, 211 (Ala. 1991) (noting that, "[i]n the event of a conflict between two statutes, a specific statute relating to a specific subject is regarded as an exception to, and will prevail over, a general statute relating to a broad subject").

However, I come to a different conclusion as to the claim that Trooper Thomas violated § 32-5A-215(b). The most significant arguments asserted by Trooper Thomas as to this claim were made for the first time at oral argument.[9] Specifically, he argued that he was not a "pedestrian"

---

[9]Thomas also argues that § 32-5A-7, Ala. Code 1975, provides an exception to the pedestrian statutes. This statute provides exemptions from following certain Rules of the Road to emergency vehicles under certain circumstances. However, as the main opinion correctly notes, it

as that term is defined in § 32-1-1.1 because, he said, that statute states that the definitions therein do not apply "when the context otherwise requires." Trooper Thomas also claimed for the first time at oral argument that two statutes dealing with the general police powers granted to Alabama's State troopers -- Ala. Code 1975, §§ 32-2-22[10] and 32-5-310[11] -- authorized (or at least implicitly authorized) his conduct and thus constitute specific exceptions to the Rules of the Road. Neither of these statutes are even mentioned in Trooper Thomas's mandamus petition or his reply brief.

As the main opinion correctly notes, because these arguments were not raised until oral argument, we may not consider them at this point. There are good reasons that, normally, entirely new arguments

---

does not mention the pedestrian statutes, and there is also a factual dispute over one of the preconditions for that statute's application.

[10]Section 32-2-22 provides: "Members of the state highway patrol, when duly appointed, shall have the powers of peace officers in this state and may exercise such powers anywhere within the state."

[11]Section 32-5-310 provides: "Any peace officer, including state troopers, … shall be authorized, and it is hereby made the duty of each of them to enforce the provisions of this chapter and to make arrests for any violation or violations thereof …."

introduced during oral argument should not be considered. These reasons are even stronger in the mandamus context, when additional development of those arguments is still possible later at the trial-court level and before this Court (as opposed on appeal from a final judgment at the end of the case). It is also true that fundamental fairness requires that the opposing party not be surprised at oral argument and, thus, deprived of the opportunity to research and respond to entirely new arguments being made. Given that this case is before this Court on a mandamus petition -- in which the petitioner bears of burden of showing a "clear" right to the relief sought -- this Court should not consider these entirely new arguments in these particular circumstances.

Although I do not agree with how the main opinion reached the ultimate result in this case, I nevertheless agree that Trooper Thomas's mandamus petition is due to be denied and, thus, concur in the result.

SELLERS, Justice (dissenting).

I respectfully dissent. Lester Lee Thomas, a State trooper with the Alabama Law Enforcement Agency, has petitioned this Court for a writ of mandamus directing the trial court to enter a summary judgment in his favor based on peace-officer immunity pursuant to § 6-5-338(a), Ala. Code 1975, and the restatement of State-agent immunity set forth in Ex parte Cranman, 792 So. 2d 392 (Ala. 2002) (plurality opinion; see note 2, supra), as modified in Hollis v. City of Brighton, 950 So. 2d 300, 309 (Ala. 2006). It is undisputed that, at the time of the accident giving rise to this litigation, Thomas was performing a law-enforcement duty for which State-agent immunity would be available. Therefore, the burden shifted to the plaintiff, Jennifer Dell Peach, to demonstrate that one of the two categories of exceptions to State-agent immunity recognized in Cranman is applicable. As the main opinion points out, one such exception is when a State agent acts beyond his or her authority by violating a statute that imposes a mandatory duty upon the State agent; this is so because such a statute removes the discretion upon which the immunity is based. Odom v. Helms, 314 So. 3d 220, 229 (Ala. 2020). Peach contends that Thomas acted beyond his authority by allegedly violating the Alabama

Rules of the Road Act ("the Act"), § 32-5A-1 et seq., Ala. Code 1975, specifically those statutes regarding a pedestrian's use of roadways. See § 32-5A-212(a), Ala. Code 1975 (A pedestrian crossing a roadway "shall yield the right-of-way to all vehicles upon the roadway."); § 32-5A-215(b), Ala. Code 1975 (A pedestrian "shall walk only on a shoulder" of a roadway.); and § 32-5A-215(d), Ala. Code 1975 (A pedestrian "upon a roadway shall yield the right-of-way to all vehicles upon the roadway."). However, Peach has offered no authority to indicate that those specific statutes are applicable to the facts presented. In fact, it appears that the statutes upon which Peach relies relate merely to a pedestrian's duty to use reasonable care for his or her own safety and, thus, bear no relation to a law-enforcement officer's attempting to enforce the traffic laws of the State. I point out that other statutes under the Act include qualifying language regarding police officers, further indicating that the Act, when read as a whole, operates to regulate the actions of pedestrians, and not to constrain the actions of police officers. See, e.g., § 32-5A-4, Ala. Code 1975 ("No person shall willfully fail or refuse to comply with any lawful order or direction of any police officer ... with authority to direct, control or regulate traffic."); § 32-5A-31(a), Ala. Code 1975 ("The driver of any

vehicle shall obey the instructions of any official traffic-control device … unless otherwise directed by a police officer ...."); and § 32-5A-137(a), Ala. Code 1975 (prohibiting stopping, standing, or parking in specified places, "[e]xcept when necessary to avoid conflict with other traffic, or in compliance with law or the directions of a police officer ...."). Based on the foregoing, I conclude that Peach has failed to meet her burden of presenting substantial evidence to show that Thomas acted beyond his authority by violating any statute designed to regulate his actions in stopping speeding motorists. I also conclude that Peach has presented no substantial evidence indicating that Thomas acted willfully, maliciously, fraudulently, or in bad faith in attempting to stop the speeding motorists. Accordingly, I would issue the writ of mandamus directing the trial court to enter a summary judgment in favor of Thomas on the basis of State-agent immunity.

Mendheim, J., concurs.